IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

HOLLINGER INTERNATIONAL INC., )
)
    Plaintiff, )
)
v. ) Case No. 04 C 698
) Magistrate Judge Nan R. Nolan
HOLLINGER INC., et al. )
)
    Defendants. )

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants Hollinger Inc., The Ravelston Corporation Limited, Ravelston Management Inc., Conrad M. Black, F. David Radler, John A. Boultbee, and Barbara Amiel-Black's ("Defendants") Motion for Entry of Protective Order. For the reasons stated below, Defendants' Motion is granted in part and denied in part. Defendants are granted leave to file a revised protective order complying with this opinion by January 28, 2005.

## BACKGROUND

The following facts are taken from the Second Amended Complaint. Plaintiff Hollinger International Inc. ("Hollinger International") owns and operates numerous domestic and foreign newspapers. Second Am. Cmplt. ¶ 2. It is a publicly traded company. Id. ¶ 3. Defendant Hollinger Inc. is a Canadian corporation whose shares are publicly traded on the Toronto stock exchange. Id. ¶ 5. It is registered as a mutual fund in Canada. Id. Hollinger Inc. controls a super-majority of voting rights in Hollinger International. Id. ¶ 4. Throughout the relevant time period, Hollinger Inc. held at least 71.8% of Hollinger International's voting rights, while at most times owning less than 50% of its equity and by 2002 owing only 30.3% of its equity. Id. Hollinger Inc. is owned by Defendant Ravelston Corporation Limited which is largely owned and controlled by Defendant Conrad Black, Hollinger International's former Chairman and Chief Executive Officer, and Defendant F. David

Radler, Hollinger International's former Deputy Chairman, President, and Chief Operating Officer. Id. ¶¶ 6, 8.

In this action, Hollinger International alleges that Defendants unlawfully made "unauthorized transfers of Hollinger International's cash to themselves, causing Hollinger International to enter into transactions with its controlling shareholders or their associates and affiliates on terms that were not fair to Hollinger International and its public, non-controlling majority shareholders, violating fiduciary duties of loyalty, care, and fair dealing, obtaining corporate assets and funds through fraudulent misrepresentations, ursurping corporate assets and opportunities through a variety of related-party transactions, and waste of corporate assets." Second Am. Cmplt. ¶ 1. Hollinger International seeks at least approximately $425.2 million in damages and $116.7 million in prejudgment interest for total damages of at least $541.9 million. Id.

## DISCUSSION

The Federal Rules of Civil Procedure permit "discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . . Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). "The Rules do not differentiate between information that is private or intimate and that to which no privacy interests attach." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 30 (1984). "Thus, the Rules often allow extensive intrusion into the affairs of both litigants and third parties." Id. The Supreme Court has noted that the liberal discovery rules "may seriously implicate privacy interests of litigants and third parties." Id. at 34.

Although pretrial discovery is usually conducted in private, "the public at large pays for the courts and therefore has an interest in what goes on at all stages of a judicial proceeding." Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co., 178 F.3d 943, 944-45 (7th Cir. 1999). In order

to protect the legitimate privacy interests of litigants and non-parties, Federal Rule of Civil Procedure 26(c) allows a court to enter a protective order for good cause shown. Good cause "is difficult to define in absolute terms, it generally signifies a sound basis or legitimate need to take judicial action." In re Alexander Grant & Co. Litig., 820 F.2d 352, 356 (11th Cir. 1987). Defendants concede that to establish good cause, they must show that disclosure of the information for which protection is sought "will result in a clearly defined and very serious injury." Andrew Corp. v. Rossi, 180 F.R.D. 338, 340 (N.D. Ill. 1998) (Keys, J.). Moreover, Defendants must make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." Gulf Oil Co. v. Bernard, 452 U.S. 89, 102 n.16 (1981).

The Seventh Circuit has made clear that a trial judge must make an independent determination of good cause prior to issuing a protective order, even if the parties submit an agreed protective order. "The judge is the primary representative of the public interest in the judicial process" and has an independent duty to balance the public's interest in the proceeding against the "property and privacy interests of the litigants." Citizens, 178 F.3d at 945. Good cause exists "only if the latter interests predominate in the particular case." This Court has recognized that "[o]nly trade secrets or 'some other properly demarcated category of legitimately confidential information,' such as information covered by a recognized privilege, 'matters occurring before the grand jury,' or information required by statute to be maintained in confidence (i.e. the name of a minor victim of a sexual assault) are entitled to be kept secret and out of the public record." Solaia Technology LLC v. ArvinMeritor, Inc., 2004 WL 549449 at *1 (N.D. Ill. Jan. 28, 2004) (citing Baxter Int'l v. Abbott Laboratories, 297 F.3d 544, 546 (7th Cir. 2002); Citizens, 178 F.3d at 946).

A court need not determine good cause on a document-by-document basis. Citizens, 178 F.3d at 946. Rather, a court may authorize the parties to restrict public access to properly demarcated

categories of legitimately confidential information if the judge (1) satisfies herself that the parties know what the legitimate categories of protectable information are and are acting in good faith in deciding which parts of the record qualify for protection and (2) makes explicit that either party and any interested member of the public can challenge the designation of particular documents. Id.

Defendants seek to protect two main categories of documents from public disclosure: (1) the personal financial documents of the individual Defendants and (2) the corporate business and financial records of Defendants The Ravelston Corporation Limited ("Ravelston"), Ravelston Management Inc. ("RMI"), and Hollinger Inc. Defendants also challenge the propriety of Hollinger International disseminating Defendants' financial documents to a government agency and/or the press. The Court addresses each issue in turn.

A. Individual Defendants' Personal Financial Documents

Defendants state that Hollinger International's document requests seek the individual Defendants' U.S. and Canadian tax returns, and all documents concerning them, as well as their shareholdings and ownership interests. Defendants argue that the entire contents of their "personal employment and financial records, including bank records, shareholdings and personal tax returns" should be covered by a protective order to protect them from annoyance and embarrassment. Defendants claim that disclosure of these documents to the press and the government would cause defendants to suffer "needless embarrassment and annoyance." Defs.' Reply at 2. Defendants also contend that Hollinger International would like to disclose these financial documents to the press "in an obvious effort to embarrass and punish the individual defendants for their alleged ill-gotten wealth." Id. at 3.

Hollinger International responds that the individual Defendants' personal financial information is highly relevant to the allegations of this case. It states that the individual Defendants' "finances are

at the heart of Plaintiff's case" alleging fraud and abuse in the management and control of a public company. Pl's Opposition at 9. Hollinger International asserts that individual Defendants' general assertions of "privacy" and "embarrassment" are insufficient to overcome the presumption of public access to judicial proceedings

Rule 26(c) provides that "for good cause shown, the court . . . may make any order which justice requires to protect a party . . . from annoyance [and] embarrassment . . . ." See also Seattle Times Co., 467 U.S. at 35 n.21 (recognizing that although Rule 26(c) does not contain a specific reference to privacy, it is "implicit in the broad purpose and language of the Rule."). Generalized claims of embarrassment do not establish good cause. Cipollone v. Liggett Group, 785 F.2d 1108, 1121 (3rd Cir. 1986) (stating "an applicant for a protective order whose chief concern is embarrassment must demonstrate that the embarrassment will be particularly serious."); Flaherty v. Seroussi, 209 F.R.D. 295, 299 (holding that the "mere fact that some level of discomfort, or even embarrassment, may result from the dissemination" of a party's deposition "is not in and of itself sufficient to establish good cause to support the issuance of [a] protective order."). Embarrassment must be substantial to rise to the level of good cause. Flaherty, 209 F.R.D. at 299.

Moreover, the Seventh Circuit has recognized that even salary information can become subject to public disclosure in litigation once its relevance to the litigation is clear. Baxter, 297 F.3d at 546 (stating "very few categories of documents are kept confidential once their bearing on the merits of a suit has been revealed."). "Many litigants would like to keep confidential the salary they make . . . but when these things are vital to claims made in litigation they must be revealed." Id. at 547; see also Union Oil v. Leavell, 220 F.3d 562, 567 (7th Cir. 2000) (recognizing that an executive's salary would not be entitled to confidential treatment "if a dispute erupted about payment (or termination).").

The individual Defendants have a valid interest in protecting the privacy of their financial records, including tax returns. See Methodist Hospitals, Inc. v. Sullivan, 91 F.3d 1026, 1031 (7th Cir. 1996) (noting that public disclosure of tax returns is "highly restricted."). It is also clear, however, that the public has a legitimate interest in knowing more about the alleged conduct of the individual Defendants. This suit involves issues of public concern. The complaint alleges that the individual Defendants unlawfully paid themselves excessive compensation. Hollinger International is a publicly traded company with hundreds of shareholders likely interested in the progress and outcome of the case. The potential embarrassment the individual Defendants would suffer from disclosure of relevant financial information does not constitute good cause when weighed against the public interest in the alleged conduct of the individual Defendants. On the other hand, public disclosure of non-relevant financial information of the individual defendants may cause unnecessary annoyance or embarrassment and would unfairly and gratuitously invade their privacy.

Thus, the Court concludes that good cause exists: (1) to prohibit the public disclosure of the portions of the individual Defendants' financial documents that neither evidence alleged improper payments to the individual Defendants from Hollinger International nor any of the transactions or payments at issue ("non-relevant financial information")[1] and (2) to prohibit Hollinger International and other persons involved in the litigation from using and disseminating the individual Defendants'

---

[1] Hollinger International has agreed not to publicly disclose the individual Defendants' tax returns. Pls' Mo. to File Surreply at 1 (stating "Hollinger wishes to inform the Court that it will not object to a protective order restricting disclosure of the individual Defendants' tax returns."). In addition, the Court finds good cause for prohibiting the public disclosure of the individual Defendants' tax returns in court filings and to persons not involved in this litigation. According to the individual Defendants, their tax returns are "neither records of payment nor evidence of any of the transactions at issue." Defs' Reply at 3. In addition, the public has a strong interest in ensuring the privacy of taxpayers' returns. "Unless taxpayers are assured that the personal information contained in their tax returns will be kept confidential, they likely will be discouraged from reporting all of their taxable income to the detriment of the government." Payne v. Howard, 75 F.R.D. 465, 469 (D. D.C. 1977).

non-relevant financial information to persons not involved in the litigation.[2]

Defendants also argue that the portions of the individual Defendants' personal financial documents which reveal "private information, including, but not limited to, evidence of ongoing medical treatment" should be designated confidential. Defs' Supp. Mem. at 2. One case from this district has recognized that bank records revealing ongoing medical treatment may establish good cause for a protective order. See Gaynor v. United States, 2002 WL 411608, at *2 (N.D. Ill. Mar. 15, 2002) (Plunkett, Senior J.). The Individual Defendants have a valid interest in protecting the confidentiality of on-going medical treatment, and the individual Defendants' on-going medical treatment is not relevant nor a legitimate matter of public concern in this suit. Thus, the portions of financial records which reveal on-going medical treatment may be protected from public disclosure by Hollinger International's attorneys to persons not involved in the litigation and in the public record of the litigation.

---

[2] None of the cases cited by Defendants compel a broader protective order governing the individual Defendants' relevant financial information. In Methodist Hospitals, the Seventh Circuit allowed personal income information to be redacted from a party's brief because the information was completely irrelevant to the dispute and "[i]ts inclusion in the state's memorandum [was] gratuitous." Methodist Hospitals, 91 F.3d at 1031. The opposite is true here. Hollinger International is a publicly traded company, and the individual Defendants' compensation is highly relevant. The other case cited by Defendants, Seattle Times Co. v. Rhinehart, 467 U.S. 20 (1984), is similarly unhelpful to Defendants. In that case, the Supreme Court held that a protective order prohibiting dissemination of "the financial affairs of the various plaintiffs, the names and addresses of Aquarian Foundation members, contributors, or clients, and the names and addresses of those who have been contributors, clients, or donors to any of the various plaintiffs" did not offend the First Amendment. Seattle Times, 467 U.S. at 27 n.8. The Aquarian Foundation is a religious group, and its spiritual leader (Rhinehart) and five of its members were plaintiffs. In support of their request for a protective order, plaintiffs submitted affidavits of several Foundation members detailing "a series of letters and telephone calls defaming the Foundation, its members, and Rhinehart – including several that threatened physical harm to those associated with the Foundation." Id. at 26. "The affiants also described incidents at the Foundation's headquarters involving attacks, threats, and assaults directed at Foundation members by anonymous individuals and groups. In general, the affidavits averred that public release of the donor lists would adversely affect Foundation membership and income and would subject its members to additional harassment and reprisals." Id. at 26-27. The individual Defendants' general claims of annoyance and embarrassment are not comparable to the threats of physical harm in Seattle Times.

This does not mean that Defendants may unilaterally deem confidential further categories of "personal information" which "may very well arise again as the [discovery] process continues." Defs' Supp. Mem. at 10. If Defendants believe that additional narrowly defined categories of "personal information" should be protected from public disclosure, they may file a motion which properly supports the protection of any such additional categories.

B.    "Confidential Business Information" of Corporate Defendants

Defendants also seek to protect the "confidential business information" of Ravelston, RMI, and Hollinger Inc. from public disclosure.[3] Hollinger Inc. is a mutual fund. Ravelston and RMI are privately-held Ontario corporations. Ravelston currently owns, directly or indirectly, about 78% of the equity of Hollinger Inc. White Dec. ¶ 5.

Defendants first argue that the Ontario Securities Act requires that certain information of Hollinger Inc. and Ravelston should be kept confidential. Hollinger Inc. announced on October 28, 2004 that it is planning to take Hollinger Inc., a public company in Canada, private. Defendants rely on the Declaration of Peter G. White and the "Disclosure Standards" of the Canadian Securities Administrators. Mr. White is a director and officer of Ravelston and RMI and a director and the co-chief Operating Officer of Hollinger Inc. White Dec. ¶ 2.

Although Defendants' brief claims that Hollinger Inc's confidential business information is protected from public disclosure by the Ontario Securities Act, Mr. White's Declaration refers only to Ravelston's records. Compare Mot. at 5 with White Dec. ¶ 6. With respect to Ravelston's records,

---

[3] Defendants define "confidential business information" as material that contains commercially sensitive business information, is kept confidential in the ordinary course of business, and is of a nature such that disclosure of the information would likely cause the producing party competitive harm or impair its commercial value or competitive worth, including, but not limited to, ledgers and journals, trial balances, bank records, financial statements, tax returns and statements, audit files, information concerning market and business plans and strategies, market and financial forecasts and current and projected budget and revenue information. Defs' Proposed Pro. Order at 2.

Mr. White states that its records relating to the potential privatization of Hollinger Inc, including drafts of transaction documents, correspondence relating to the transaction, its financial books and records (including ledgers and journals, trial balances, bank records, financial statements, tax returns and statements, audit files, information concerning market and business plans and strategies, market and financial forecasts and current and projected budget and revenue information), and any other information that may be considered to be a material fact or material change as defined in the Ontario Securities Act "need to be maintained as confidential pending any disclosure that may be required pursuant to the Act." White Dec. ¶ 6.[4] Mr. White further states: "Material facts or material changes related to the proposed privatization transaction must be disclosed as required by the Act." Id. Defendants further explain that Ravelston is in a "special relationship," as defined by the Ontario Securities Act, with Hollinger Inc. and is prohibited from informing other persons of any material information before it has been generally disclosed. The portion of the Disclosure Standards quoted by Defendants provides that Hollinger Inc. may "delay disclosure of a material change and . . . keep it confidential temporarily where immediate release of the information would be unduly detrimental to the company's interest." National Policy 51-201 Disclosure Standards ¶ 2.2(1). Mr. White concludes that it is his "business judgment that public disclosure of the documents described . . . would be prejudicial to completing the transaction and potentially be unlawful and would greatly harm the interests of Ravelston and its shareholders and potentially subject it to considerable penalties." White Dec. ¶ 6.

---

[4] Mr. White's concern about public disclosure of Ravelston's records relating to the potential transaction with Hollinger Inc., including drafts of transaction documents and correspondence related to the transaction, appears to be unfounded. Hollinger International states that it has not asked for Ravelston's records relating to the potential privatization transaction, including drafts of transaction documents and correspondence relating to the transaction. Pl's Opp. at 5. Moreover, Hollinger International agrees that any responsive documents which concern Hollinger Inc's privatization can be temporarily redacted to remove any nonpublic details about Hollinger Inc's privatization.

Neither Mr. White's Declaration nor the Disclosure Standards provides good cause for sealing all of Ravelston's information detailed in Mr. White's affidavit. Mr. White is a non-lawyer and his conclusory "business judgment" does not provide good cause for prohibiting public disclosure of Ravelston's "confidential business information." Although there is good cause for prohibiting premature public disclosure of material information regarding Hollinger Inc's privatization in violation of Canadian law, Defendants have not sufficiently demonstrated that the entirety of Ravelston's "confidential business information" is entitled to confidential status. To demonstrate good cause, Defendants must specifically explain why divulging each category of Ravelston's "confidential business information" would violate the Ontario Securities Act. Defendants have not sufficiently spelled out why each category of information listed by Mr. White would be material to a proposed 2005 privatization. For example, Hollinger International states that its discovery requests date back to the mid-1990s. Defendants have not adequately explained why non-current financial information would be material to a proposed privatization. Moreover, with respect to Ravelston's current financial information, Hollinger International has shown that it is already in the public domain. Defendants have not stated why Canadian Securities Laws prohibit dissemination of information that is already public. The Court declines to issue a blanket protective order covering all of Ravelston's "confidential business information" because it has not demonstrated that all of this information warrants protection. This portion of Defendants' motion is denied without prejudice, and Defendants will be permitted an additional opportunity to identify the narrow categories of material information they seek to protect.

Defendants additionally state that Ravelston provides management services to third parties, including CanWest Global Communications Corp. Defendants explain that documents relating to Ravelston's ongoing business relationships are kept confidential in the ordinary course of business. Mr. White states that disclosure of "such documents and information contained therein for purposes

other than for use in this litigation would harm Ravelston and the third parties to which it provides management services." White Dec.¶ 7. Mr. White's conclusory assertion does not establish good cause for prohibiting dissemination of all of Ravelston's business and financial information for a non-litigation purpose. Mr. White makes no effort to describe specifically what types and categories of documents Defendants seek to protect on this ground or how disclosure would be harmful to Ravelston or third parties.

Finally, Ravelston's and RMI's status as privately-held corporations whose business and financial information are not generally available to the public does not alone equate to good cause. Ravelston and RMI's self-serving statement that their business and financial information is confidential because they say so is insufficient. Baxter Int'l Inc., 297 F.3d at 547 (rejecting parties' contention "that the document must be kept confidential because we say so."); Union Oil v. Leavell, 220 F.3d 562, 567 (7th Cir. 2000) ("[c]alling a settlement confidential does not make it a trade secret . . . )." Moreover, Defendants have not demonstrated that public dissemination of Ravelston's and RMI's business and financial information would cause any specific harm to its competitive and financial position.

In sum, the corporate Defendants have not made a specific showing that public disclosure of all of their "confidential business information" will result in serious injury or harm. However, in an abundance of caution, the Court will allow Defendants until January 28, 2005 to demonstrate that specifically defined portions of the records of Ravelston and Hollinger Inc. not already known to the public and which are material information related to Hollinger Inc.'s privatization are legitimately entitled to protective order protection.

C.  Plaintiff's Disclosure of Documents Obtained During Discovery to the Government and Press

Lastly, Defendants raise various concerns about the appropriateness of Hollinger International disseminating their financial information to the government and the press. "Absent a protective order, parties to a law suit may disseminate materials obtained during discovery as they see fit." Jepson, Inc. v. Makita Electric Works, Limited, 30 F.3d 854, 858 (7th Cir. 1994); see also Public Citizen, et al. v. Liggett Group, Inc., 858 F.2d 775, 790 (1st Cir.1988) (explaining that "ordinarily (in the absence of good cause) a party receiving discovery materials might make them public."). Defendants must make a good cause showing for a protective order with a non-dissemination provision. Wauchop v. Domino's Pizza, Inc., 138 F.R.D. 539, 545 (N.D. Ind. 1991) (stating "the party seeking the protective order bears the burden of demonstrating good cause for the entry of a protective order with a non-dissemination provision."). The fact that Hollinger International may share information received during discovery with the government or the media does not in and of itself justify entry of a protective order provision with a non-dissemination provision.[5] Culinary Foods, Inc. v. Raychem Corp., 151 F.R.D. 297, 306 (N.D. Ill. 1993); Wauchop, 138 F.R.D. at 545 (stating "[t]he risk—or in this case, the certainty—that the party receiving the discovery will share it with others does not alone constitute good cause for a protective order.").

Defendants are concerned that production of their personal financial information in discovery will result in non-voluntary disclosure of personal information to the government. Defendants contend that Hollinger International's relationship with the federal government "threatens the rights of the Defendants and abuses the civil discovery process." Defs' Supp. Memo. at 3. According to the

---

[5] As discussed above, good cause has been shown for preventing the dissemination of non-relevant financial information of the individual Defendants to persons not involved in this litigation, including the government and the media.

Defendants, "[a]t issue here are defendants' rights to notice of the government's request for documents and an opportunity to challenge such requests." Id. at 4. Defendants seek a protective order provision essentially requiring that Hollinger International provide the producing defendant with notice of any government request for any of the producing Defendant's documents.

Hollinger International has agreed to "give Defendants notice of any governmental request for documents Defendants produce in this litigation." Pls' Opp. to Supp. Memo. at 14 n.15.[6] As discussed below, Hollinger International's notice to Defendants of government requests for their documents will adequately addresses their concerns regarding the Right to Financial Privacy Act ("RFPA"), the Freedom of Information Act ("FOIA"), and Federal Rule of Criminal Procedure 6(e).

1. The Right to Financial Privacy Act

Defendants seek a protective order provision prohibiting Hollinger International from disclosing documents produced during discovery which fall within the RFPA's definition of "customer financial records" to the SEC. The RFPA governs financial institutions' disclosure of customer financial records to government authorities and requires generally that notice be given to customers of banks whose records are sought. 12 U.S.C. §§ 3401-3422.[7] Under the RFPA, a "'financial record' means an original of, or copy of, or information known to have been derived from, any record held by a financial institution pertaining to a customer's relationship with the financial institution." 12 U.S.C. § 3401(2). For example, Section 3403 provides that "[n]o financial institution, or officer, employees,

---

[6] The Court assumes this agreement includes an agreement by Hollinger International not to voluntarily distribute documents falling within the RFPA's definition of "customer financial information" to the press. Hollinger International's offer would be meaningless if the government could obtain the bank records at issue directly from the press.

[7] The notice requirements do not apply to grand jury subpoenas. 12 U.S.C. § 3413(i) (stating the RFPA does not apply "to any subpoena or court order issued in connection with proceedings before a grand jury.").

or agent of a financial institution, may provide to any Government authority access to or copies of, or the information contained in, the financial records of any customer except in accordance with the provisions of this chapter." The RFPA also prohibits the transfer of financial records originally obtained under the RFPA to another agency or department "unless the transferring agency or department certifies in writing that there is reason to believe that the records are relevant to a legitimate law enforcement inquiry . . . within the jurisdiction of the receiving agency or department." 12 U.S.C. § 3412(a). The RFPA applies to the SEC except as provided in the Securities Exchange Act of 1934. 12 U.S.C. § 3422.

Defendants explain that the subject matter of this lawsuit is also the subject of pending investigations by the SEC and three of the Defendants have already been named in an SEC enforcement action filed on November 15, 2004. Hollinger International admits that it is cooperating with the SEC. Defendants contend that the SEC should be required to request financial records from the Defendants directly or from the bank itself. Defendants do not want the SEC to be able to receive their bank records from Hollinger International without providing any notice to Defendants that they would be entitled to under the RFPA. To this end, Defendants request that a protective order provision require parties in receipt of a subpoena or formal or informal document demand from the government to provide the producing parties with notice of such requests so that the producing parties may move to quash the subpoena or request.

The RFPA does not preclude the government from obtaining the individual Defendants' bank records from Hollinger International because the RFPA only applies when the government seeks a customer's records from a financial institution. Moreover, Defendants have not cited a single case expanding the RFPA's coverage to an individual's banking records held by a third-party. In any event, Hollinger International has agreed to provide Defendants with notice of any government agency,

including the SEC, request for Defendants' documents, and Defendants will have an adequate opportunity to oppose disclosure.[8]

2. Freedom of Information Act

Defendants also have FOIA concerns regarding Hollinger International's dissemination of their documents to the government. Parties that provide documents to the government may request confidential treatment to prevent public disclosure in response to a FOIA request. FOIA precludes the government from disclosing Defendants' "commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). Defendants explain that each government agency promulgates its own regulations regarding FOIA, including the process by which FOIA confidentiality may be requested and whether FOIA protections are waivable. Accordingly, Hollinger International shall inform the producing Defendant(s) of the identity of the government authority requesting Defendants' records which will allow the producing Defendant(s) to properly request FOIA confidentiality treatment they deem appropriate.

3. Federal Rule of Criminal Procedure 6(e)

Defendants are lastly concerned that Hollinger International may provide documents to the United States Attorneys' Office, which they argue would undermine the secrecy provisions of Federal

---

[8] Hollinger International explains that neither Hollinger Inc. nor Ravelston's records are covered by the RFPA because neither is a partnership of five or fewer individuals." See 12 U.S.C. §§ 3401(2), (4), and (5). Hollinger International further explains that Black's and Radler's bank records are not afforded protection under the RFPA because the SEC has sued them. See 12 U.S.C. 3413(e) (stating "[n]othing in this chapter shall apply when financial records are sought by a Government authority under the Federal Rules of Civil Procedure or Criminal Procedure . . . in connection with litigation to which the Government authority and the customer are parties."). Although the SEC has sued Black and Rader in a civil enforcement action, it has not been shown that the SEC has sought their financial records in connection with that litigation under the Federal Rules of Civil Procedure. Thus, Defendants Conrad Black and Radler as well as Boultbee, Amiel Black, Colson, and Perle are entitled to notice of a government request for their financial records and the opportunity to oppose such request.

Rule of Criminal Procedure 6(e). Defendants explain that for the U.S. Attorney's Office to obtain documents from Defendants, it must seek a grand jury subpoena. Defendants state that any documents produced pursuant to a grand jury subpoena would be subject to the secrecy requirements of Rule 6(e).[9] If Hollinger International provides Defendants' documents to the U.S. Attorney's Office, the U.S. Attorney's Office will not be required to seek a grand jury subpoena and Rule 6(e) will not apply. Defendants conclude that their information may therefore be open to public disclosure. Hollinger International responds that the SEC has brought a civil enforcement action against Hollinger Inc., Black and Radler and will be pursing discovery from them directly. Hollinger International further states that the SEC is entitled to share information it obtains through civil discovery with the U.S. Attorney's Office. See United States v. Fields, 592 F.2d 638, 645-58 (2d Cir. 1978) (describing procedures for sharing of information between the SEC and DOJ).

The question of whether Defendants may rely on Rule 6(e) to resist the U.S. Attorney's effort to gather Defendants' documents from Hollinger International is premature. It may never be reached because the U.S. Attorney may not seek to obtain Defendants' documents from Hollinger International. The Court specifically reserves decision on this issue until it is presented. Defendants can apply for relief if and when necessary. Defendants will be given notice and an opportunity to oppose disclosure

---

[9] Not every document produced to a grand jury necessarily constitutes "matters occurring before the grand jury."

> The principle has therefore emerged that "matters occurring before the grand jury" do not include every document of which the grand jury happens to have custody. If a document is sought for its own sake rather than to learn what took place before the grand jury, and if its release will not seriously compromise the secrecy of the grand jury's deliberations, Rule 6(e) does not forbid its release.

In the Matter of Special March 1981 Grand Jury, 753 F.2d 575, 578 (7th Cir. 1985); see also United States v. Sanford, 589 F.2d 285, 290 (7th Cir. 1978) (rejecting "assumption that Rule 6(e) shields every item of evidence considered by the grand jury, whether or not obtained by a subpoena, with an impenetrable cloak of secrecy.").

of their records to the U.S. Attorney's Office on the ground that the request seeks production of documents in violation of Rule 6(e). It can be determined at that time whether the secrecy protections of the grand jury provide good cause to prohibit dissemination.

Finally, the Court wants to make clear that the above authorities do not prohibit disclosure of Defendants' records in public court filings or proceedings. Nothing in the RFPA prevents parties from filing Defendants' relevant customer financial information in the public record of the litigation. Moreover, the RFPA does not prevent government authorities from gaining access to customer financial information by searching through public court records. Additionally, a document that qualifies for confidential treatment under FOIA does not necessarily satisfy the good cause requirement of Rule 26. Forest Prods. N.W., Inc. v. United States, 2004 WL 2050312, at *3-5 (Fed. Cl. Sept. 14, 2004). The court's authority to grant a protective order is governed by Rule 26, not FOIA. FOIA does not relieve Defendants of their burden to demonstrate with particularity what information they believe is confidential, how disclosure of that information would harm them, and why that harm should outweigh the presumption of public access to the courts. The public's interest in these proceedings outweighs the possibility that relevant financial information covered by the RFPA or entitled to confidential treatment under FOIA will be disclosed in the public record of the litigation.

In sum, except as provided in this Memorandum Opinion and Order, Hollinger International is not prohibited from using and disclosing documents obtained in discovery to the government or the media.[10]

---

[10] None of the cases cited by Defendants support (and Defendants do not appear to be requesting) a protective order provision prohibiting Hollinger International from disclosing *all* information produced during discovery by Defendants to the government. In Nowaczyk v. Matingas, 146 F.R.D. 169, 171 (N.D. Ill 1993), Judge Alesia granted defendants' request for a protective order presumably precluding plaintiff, a Polish government representative, from disclosing all documents received in civil discovery to criminal prosecutors in Poland. Defendants argued that absent a protective order, Polish prosecutors would be able to gather criminal evidence in this country without

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Protective Order is granted in part and denied in part. Counsel are directed to meet and confer in good faith and attempt to resolve any remaining disputes regarding a protective order consistent with this opinion and with the limitations on protective orders established by the Seventh Circuit Court of Appeals. Counsel are encouraged to compromise and attempt to resolve disputes without litigation, whenever possible. Defendants may file a revised protective order complying with this opinion by January 28, 2005.

---

following the procedures governing letters rogatory. Moreover, the letter rogatory procedure was not available until the Polish government commenced a proceeding in Poland, which it had not done. Id. at 177. Judge Alesia determined that good cause existed to issue a protective order because the defendants had a "right to insist that Polish prosecutors fulfill the requirements of United States law to obtain discovery in the United States in connection with the prosecutors' criminal investigation." Id. at 178. The Nowaczyk court relied heavily on Campbell v. Eastland, 307 F.2d 478 (5th Cir. 1962), in which the target of a criminal tax fraud investigation sued the IRS for a refund and issued discovery request for the reports of the investigating agents. The reports of the investigating agents were protected from disclosure in the criminal prosecution by the Jencks Act. The Fifth Circuit reversed the trial court's decision permitting the discovery and stated that "[a] litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restriction on criminal discovery and thereby obtain documents he would not otherwise be entitled to for use in his criminal suit." Id. at 487. In sharp contrast to Nowaczyk and Campbell, there has been no showing here that the documents produced by Defendants in this action are not otherwise discoverable or obtainable by the government.

The other case cited by defendants, Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc., 175 F.Supp.2d 573, 579 (S.D.N.Y. 2001), recognized that when the "government itself has an opportunity to escalate the pressure on defendants by manipulating simultaneous civil and criminal proceedings, both of which it controls," "there is a special danger that the government can effectively undermine rights that would exist in a criminal investigation by conducting a de facto criminal investigation using nominally civil means." The Sterling court explicitly distinguished that case from this special situation because the "[p]laintiff [was] a private entity, with interests distinct from those of the government" and "[t]here was no reason to assume its civil case is simply a stalking horse for the government's criminal inquiry, rather than a good faith effort to obtain compensation for its own private injuries." Id. Likewise, there is no evidence indicating that this civil case is "simply a stalking horse" for the government's investigation.

ENTER:

*Nan R. Nolan*
**Nan R. Nolan**
**United States Magistrate Judge**

Dated: 1/19/05