UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HOLLINGER INTERNATIONAL, INC. ) ) Plaintiff, ) ) v. ) ) HOLLINGER INC., et al. ) ) Defendants. ) | Hon. Blanche M. Manning<br><br>Case No. 04 C 0698 |

## MEMORANDUM AND ORDER

Plaintiff Hollinger International, Inc. ("International" or "the Company") has moved this Court, pursuant to 28 U.S.C. § 1292(b), to certify an immediate appeal of this Court's October 8, 2004 Memorandum and Order ("the October Order"), which dismissed International's claims under the Racketeer Influenced and Corrupt Organization Act ("RICO"). For the reasons set forth herein, this motion is DENIED.

### BACKGROUND[1]

International brought the instant action alleging that Hollinger Inc. ("Inc.") and individual and corporate defendants (collectively, "Defendants") used their positions as officers, directors, and controlling shareholders of International to "loot" over $380 million from the Company.[2] In its First Amended Complaint ("the Complaint"), International alleged violations

---

[1] The facts in the Background section are derived from the First Amended Complaint, the Second Amended Complaint, and the October Order. Because the Court thoroughly discussed the facts in the October Order, this opinion will only briefly review the facts relevant to the Section 1292(b) motion.

[2] The alleged conduct in the present action is also the basis for several other cases in this district against many of the litigants in this case: (1) two SEC enforcement actions ("the SEC Actions") – SEC v. Hollinger International, Inc., No. 04 C 336 (Manning, J.) and SEC v. Conrad Black, David Radler, and Hollinger, Inc., No. 04 C 7377 (Hart, J.); and (2) three shareholder class actions ("the Shareholder Actions") – Nos. 04 C 0834, 1276, and 2505 (Coar, J.).

of RICO, 18 U.S.C. §§ 1962 and 1964, and state law claims for breach of fiduciary duty, unjust enrichment, and civil conspiracy. By alleging RICO violations, International sought to recover treble damages – $1.25 billion – plus attorneys' fees and costs. In support of its RICO claims (Counts I and II), International set forth "predicate acts" which alleged that Defendants caused International "to transfer to them sham non-compete payments, sell them valuable newspaper assets at below market prices, and pay them other unwarranted, excessive, and unauthorized payments."

In the October Order, this Court granted Defendants' Motion to Dismiss on the grounds that 18 U.S.C. § 1964(c) ("the RICO Bar") precludes International's RICO claims.[3] Under section 1964(c), a party may not bring a RICO claim if the conduct "would have been actionable as fraud <u>in the purchase or sale of securities</u>." (Emphasis added.) Based on the above statutory language, the legislative history, and the decisions interpreting the scope of the RICO Bar, this Court found that section 1964(c) should be broadly construed to preclude wire and mail fraud from forming predicate acts under RICO "if such conduct would also be actionable as securities fraud." (October Order at 10.)[4] In applying this test, courts carefully examine the predicate acts

---

[3] In dismissing the RICO counts, International's sole basis for federal jurisdiction, this Court refused to exercise supplemental jurisdiction over the remaining state law claims. The Court, however, permitted International to file a Second Amended Complaint to bring their state law claims under diversity jurisdiction. These state law claims are the only counts currently pending before the Court.

[4] In reaching this conclusion, the Court noted that neither the Seventh Circuit nor any courts in this district have interpreted the scope of the RICO Bar. (<u>Id.</u> at n.7.) Therefore, the October Order relied on decisions from other circuits such as <u>Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.</u>, 189 F.3d 321, 329-30 (3d Cir. 1999); <u>Gatz v. Ponsoldt</u>, 297 F. Supp. 2d 719, 730 (D. Del. 2003); <u>In re Enron Corp. Sec. Lit.</u>, 284 F. Supp. 2d 511, 619 (S.D. Tex. 2003); <u>Florida Evergreen Foliage</u>, 165 F. Supp. 2d at 1345, 1356-58 (M.D. Fla. 2001); <u>Burton v. Ken-Crest Servs., Inc.</u>, 127 F. Supp. 2d 673, 677 (E.D. Pa. 2001); <u>In re Ikon Office Solutions, Inc.</u>, 86 F. Supp. 2d 481, 486 (E.D. Pa. 2000); <u>Tyrone Area Sch. Dist. v. Mid-State Bank & Trust Co.</u>, 1999 WL 703729, at *4 (W.D. Pa. Feb. 9, 1999).

in relation to the overall fraudulent conduct to determine if they are part of a scheme that operated as a fraud on sellers or purchasers of securities. (Id. at 11.) The section 1964(c) bar should also be broadly applied to prevent the plaintiffs from "artfully pleading" around the RICO Bar. (Id. at 11-12.)

Applying the above standards, this Court found that the predicate acts in the Complaint were "actionable" as security fraud and thus barred by section 1964(c). (Id. at 18-19.) In reaching this conclusion, the Court rejected International's contention that the RICO predicate acts do not constitute actionable securities fraud because they did not involve the "purchase or sale of securities." (Id. at 15.) While the predicate acts themselves did not actually involve the sale or purchase of securities, this Court found that they were nevertheless actionable as securities fraud because they were an "integral part" of Defendants' scheme to defraud and mislead International's majority non-controlling shareholders, who then purchased or sold securities based on Defendants' misstatements and/or omissions. (Id. at 18.) This conclusion is further supported by the fact that the SEC Actions and the Shareholder Actions allege violations of securities laws against many of the Defendants in this case based on much of the same conduct alleged in this action. (Id. at 17-18.)

International now moves under 28 U.S.C. § 1292(b) to certify the following two issues for immediate appeal to the Seventh Circuit:

1. Whether the RICO Claims based on predicate acts that: (i) "are not per se violations of securities laws," October Order at 16; (ii) "do not directly involve the sale of purchase of securities," id. at 9; and (iii) are transactions on which Plaintiff lacks standing to bring a securities fraud claim, nevertheless "would have been actionable as fraud in the purchase of securities" within the meaning of § 1964(c) and are therefore barred by the PSLRA.

2. Whether the PSLRA bars RICO claims when none of the predicate acts is a violation of the securities laws, but where the predicate acts are "part of an

-3-

overreaching scheme to defraud" a public company "by misappropriating and usurping the Company's assets for [Defendants'] personal enrichment," October Order at 18.

(International's Motion for Certification at 3.)

## ANALYSIS

Section 1292(b) permits district courts to certify an order for immediate appeal if the order sought to be appealed involves: (1) a controlling question of law; (2) as to which there is substantial ground for difference of opinion; and (3) an immediate appeal may materially advance the ultimate termination of the litigation. Ahrenholz v. Bd. of Trustees of the Univ. of Ill., 219 F.3d 674, 675 (7th Cir. 2000).[5] To prevail, the party seeking certification must demonstrate all the factors. Id. The fact that an immediate appeal will advance the litigation is not sufficient in and of itself. Id.

Before addressing the three statutory factors, the Court will first review the standards governing interlocutory appeals. Certification under 1292(b) "is the exception, not the rule," and therefore, courts should only "sparingly" grant permission. In re Brand Name Prescription Drugs, 1998 WL 808992, at * 3 (N.D. Ill. Nov. 17, 1998). The movant thus "bears a heavy burden" of demonstrating that "exceptional circumstances justify a departure from the basic policy of postponing appellate review until after entry of a final judgment." Id.

With these standards in mind, the Court now turns to the three statutory requirements. The Seventh Circuit defines a "controlling question of law" as an issue "the court of appeal could decide quickly and cleanly without having to study the record," such as "the meaning of a

---

[5] Although subsection (b) does not contain a time in which the party must move for certification, the motion must be filed "within a reasonable time after the order sought to be appealed was entered." Id. Here, Defendants do not assert that the motion is untimely. As this motion was filed within 21 days of the October Order, this Court finds that it was filed within a reasonable time.

-4-

statutory ... provision." Ahrenholz, 219 F.3d at 676-77. Additionally, a ruling "which substantially limit[s] the damages the plaintiffs [could have] recover[ed]" has been held to be a "controlling question of law." Mister v. Illinois Central Gulf R.R. Co., 790 F. Supp. 1411, 1426 (S.D. Ill. 1992). See also In re Brand Name Prescription Drugs, 1998 WL 808992, at * 5 (in orders disposing of a large percentage of the plaintiff's recoverable damages, "the proper measure of damages is always a controlling question of law").

Here, after applying the above standards to the October Order and the issues International seeks to certify, this Court finds that International has met the "controlling question of law" requirement. The October Order barring the RICO claims reduced Defendants' potential liability by two-thirds (from roughly $1.2 billion to $400 million). Thus, the Order "substantially limited" the amount of damages International could potentially be awarded. Additionally, the issues International seeks to certify involve the interpretation of the scope of section 1964(c) – e.g., whether this section should be interpreted so as to encompass RICO predicate acts which do not directly involve the sale or purchase of securities but are instead part of an overreaching scheme to defraud and mislead the non-controlling majority shareholders. In this Court's view, the Seventh Circuit would be able to resolve this "purely legally issue" very quickly without having to delve into the record, other than the Amended Complaint. Accordingly, the first section 1292(b) factor is met.

The Court next turns to whether there exists a "substantial ground for difference of opinion" on the legal issues to be certified. To demonstrate that there is a substantial difference of opinion on a question of law, the movant must show that "there are substantial conflicting decisions regarding the claimed controlling issue," or where the controlling question "is not settled by controlling authority," there is "a substantial likelihood" that the district court's

decision will be reversed on appeal. Gamboa v. City of Chicago, 2004 WL 2877339, at *4 (N.D. Ill. Dec. 13, 2004). The movant thus may not prevail by simply showing a "lack of judicial precedent" or that the issue is one of first impression. See In re Bridgestone/Firestone, Inc., 212 F. Supp. 2d 903, 909 (S.D. Ind. 2002); Demert & Dougherty v. Goodman, 2001 WL 1539063, at *6 (N.D. Ill. Nov. 30, 2001). Instead, the party seeking certification must show "substantial conflicting positions regarding the issue of law proposed for certification." In re Bridgestone/Firestone, Inc., 212 F. Supp. 2d at 909-10.

Here, International contends that there is "substantial grounds for difference of opinion" on whether the RICO Bar applies where the predicate acts do not directly involve the sale or purchase of securities. As set forth in the October Order neither the Seventh Circuit nor any court in this district has addressed this issue. In fact, no court has addressed the application of the RICO Bar to facts on point with this case.

The lack of precedent, however, is not dispositive. Defendants must still show that there are "substantial conflicting authorities" or that there is a "substantial likelihood" that the October Order will be reversed on appeal. In support of this position, Defendants contend that: (1) the cases which this Court relied on in the October Order – Gatz and Enron – are distinguishable from this case because the plaintiffs in those cases had standing to bring a securities fraud action, whereas International does not; and (2) there are two "lines of decisions" and the following cases "substantially conflict" with the October Order because they have "more narrowly applied the PSLRA bar than did this Court": Bald Eagle Area School Dist. v. Keystone Fin., Inc., 189 F.3d 321 (3d Cir. 1999); Howard v. America Online, Inc., 208 F.3d 741 (9th Cir. 2000); District 65 Retirement Trust for Members of the Bureau of Wholesale Sales Rep. v. Prudential Sec., Inc., 925 F. Supp 1551 (N.D. Ga. 1996); Gintowt v. TL Ventures, 226 F. Supp. 2d 672 (E.D. Pa.

2002); Gintowt v. TL Ventures, 239 F. Supp. 2d 580 (E.D. Pa. 2002); Peters Co. v. Stayhealthy, Inc., 2004 WL 1465830 (D. Minn. June 1, 2004).

These contentions, however, do not support a finding that there are "substantial conflicting authorities" or that there is a "substantial likelihood" of reversal. For example, as explained in the October Order, the fact that International does not have standing does not affect the validity of this Court's decision. The courts in both Gatz, 297 F. Supp. 2d at 731 and In re Enron Corp. Sec. Lit., 284 F. Supp. 2d at 619, held that the section 1964(c) bar applies regardless of whether the plaintiff has standing to bring a securities fraud action. International has not set forth any decisions which conflict with this proposition.

Additionally, after carefully reviewing the proposed conflicting authorities cited by International, the cases cited in the October Order, the facts of this case, and the SEC and the Shareholder Actions, this Court finds that International has not sufficiently demonstrated that there are "substantial conflicting authorities" or that there is a "substantial likelihood" of reversal. Indeed, many of the opinions which International cites as "conflicting authorities," in fact support the October Order or are factually distinguishable so as not to constitute "substantially conflicting" opinions. The one opinion (District 65, 925 F. Supp. 1551) which could be characterized as "conflicting" with the October Order does not cite any authority for its narrow interpretation of section 1964(c), which conflicts with the broad interpretation adopted by the other decisions in the October Order and implied in the legislative history of the PSLRA.

For example, in Bald Eagle, 198 F.3d at 323-25, the plaintiff brought a RICO action to recover money lost as a result of a Ponzi scheme. Affirming dismissal of the RICO claims under section 1964(c), the Third Circuit rejected the plaintiff's contention that the RICO predicate acts did not constitute actionable securities fraud. Id. at 329. The predicate acts consisted of the

defendants "obtaining deposits of funds, failing to maintain collateral, failing to maintain custody of funds, paying out more funds to withdrawing clients than the fair value of their account, providing false statements, and lying to bank regulators." Id. Although the court acknowledged that these predicate acts might not themselves be actionable as securities fraud, it rejected the plaintiffs "surgical presentation" of the facts to avoid the RICO Bar. Id. at 330. The plaintiff "ignore[d] the hard reality that the [RICO predicate acts] [were] an integral part of [the Defendants'] securities fraud scheme." Id. at 330. The predicate acts thus "were so closely connected to and dependent upon conduct undertaken in connection with the purchase or sale of securities that it was actionable as securities fraud." Id.

Relying on Bald Eagle, the court in Peters Co., 2004 WL 1465830, at *3-4, held that the predicate acts were not "so closely connected to and dependent upon conduct undertaken in connection with the purchase or sale of securities that it was actionable as securities fraud." The plaintiff in Peters Co. made a loan to the defendant which included a security agreement granting the plaintiff an option to purchase stock in the defendant. Id. at *1. The plaintiff alleged that the defendant made misrepresentations in securing the financing. Id. On the plaintiff's motion to amend its complaint to include a RICO count, the defendant asserted that any RICO claims were barred by section 1964(c). Id. at *2.

Applying the test in Bald Eagle, the court held that the misrepresentation which was the basis of the RICO claim was related to the loan, not the purchase or sale of securities. Id. at *3. Therefore, "the connection between the alleged fraud and the securities transaction is tenuous at best." Id. In support of this decision, the court noted that: (1) many of the cases cited by the defendant which applied the RICO Bar involved conduct "that was the basis for an SEC investigation"; and (2) the defendant failed to establish "that any private plaintiff" would have

-8-

standing to bring a securities action based on the alleged conduct because the conduct was "not independently actionable." Id. at *3-4.

In Howard, 208 F.3d at 747, subscribers sued their internet service provider alleging improper billing, fraudulent stock manipulation, and failure to timely cancel subscriptions. In determining whether section 1964(c) barred the RICO claims, the Ninth Circuit held that the RICO predicate acts (e.g., improper billing, false advertising) were not related to the alleged securities fraud allegations (e.g., stock manipulation and illegal accounting). Id. at 749. The RICO claims and the securities fraud claims "shared the same participants" but had a "different purpose, result, victim and method." Id. Accordingly, because the RICO predicate acts were "not related" to the securities fraud, the section 1964(c) bar was not applicable. Id.

International also relies on Gintowt, 226 F. Supp. 2d at 673-74, in which a shareholder of a privately held company, brought a RICO claim against the company alleging that it denied his access to company records and improperly transferred the company's assets. Denying the defendant's section 1964(c) motion to dismiss, the court noted that the defendants "fail[ed] to identify any tangible relationship between the alleged predicate act and any sale or purchase of securities by the plaintiff." Id. The court thus held that the RICO bar was not applicable because the alleged RICO acts were not "undertaken with the purchase or sale of securities." Id. The court did, however, note that the defendant could reassert this contention on summary judgment if it could show a "purchase or sale of securities." Id.

The one opinion International cites which actually conflicts with the October Order, District 65, does not cite any authority for its narrow interpretation of section 1964(c), which conflicts with the broad interpretation adopted by other decisions and set forth in the legislative history of the PSLRA. In District 65, 925 F. Supp. at 1556-58, a pension fund sued its

investment company alleging breach of fiduciary duty and RICO claims. The defendant moved to dismiss the RICO claims under section 1964(c). In response, the plaintiff contended that "the predicate acts . . . [were] not based solely upon conduct that would have been actionable as fraud in the purchase or sale of securities." Id. at 1567. In support of this contention, the plaintiffs asserted that the RICO predicate acts alleged misrepresentations regarding the value and details of the plaintiff's investments, such as its liquidity, value, cause of losses, and stating that certain actions would be taken when they were not. Id. at 1568. The court noted, without citation to any authority, that the "scope" of the term "in connection with" in section 1964(c) "is a debated issue" and that the "question is whether the actions underlying the mail and wire fraud are so remote as to not be in connection with the purchase or sale of securities." Id. Applying this standard, the court concluded that the RICO predicate acts "relate[d] to the business relationship between [the parties] rather than the purchase or sale of securities." Id.

In Tyrone Area School Dist. v. Mid-State Bank & Trust Co., 1999 WL 703729, at *4-6 (W.D. Pa. Feb. 9, 1999), the plaintiff cited District 65 in support of its contention that section 1964(c) should be narrowly interpreted and not applied unless the RICO predicate acts involved the sale or purchase of securities. The plaintiff in Tyrone brought state law and RICO claims against its investment advisor and a bank after it lost millions of dollars in a Ponzi scheme. Id. at *1. The defendants moved to dismiss the RICO claims on the grounds that they were barred by section 1964(c). Id. at *2. In response, the plaintiff, citing District 65, contended that section 1964(c) was not applicable because the RICO predicate acts were unrelated to the purchase or sale of securities. Id. at 3-4.

After reviewing the legislative history of section 1964(c), the court held that plaintiff's proposed reading of the statute and reliance on District 65 were without merit. Id. Despite

-10-

"artfully craft[ing]" the RICO allegations to "avoid any mention of securities fraud," the court found that the "racketeering activities were done in furtherance of the Ponzi Scheme," and were "inextricably linked" to securities fraud. Id. at *5-6. In reaching this conclusion, the court found that its decision was supported by the fact that the SEC brought an action against the defendants alleging securities fraud based on much of the same conduct alleged in plaintiff's RICO claims. Id. at *6.

Here, similar to Bald Eagle and Tyrone but in contrast to Peters Co., Howard, Gintowt, and District 65, this Court held in its October Order that the RICO predicate acts were: (1) "an integral part of Defendants' scheme" to defraud the non-controlling shareholders; and (2) the basis for the SEC Actions and the Shareholder Actions. Specifically, this Court found that:

> International's predicate acts [were] part of an overreaching scheme to defraud International (and thus also its majority non-controlling shareholders) by misappropriating and usurping the Company's assets for their personal enrichment at the expense of International and the other shareholders. To facilitate and disguise this scheme, Defendants used the mails and wires (the predicate acts) and caused International to make material misstatements and omissions in its financial records and public filings with the SEC.

(October Order at 18-19.) So "integral" to Defendants' scheme were the predicate acts that "without the use of the mails and wires, Defendants would not have been able to loot over $380 million from International." (Id. at 16.) Additionally, in an attempt to hide their fraudulent scheme, Defendants falsified its corporate books and records and failed to disclose material information in International's SEC filings. (Id. at 18.) These misstatements, as demonstrated by the Shareholder Actions, "deceived the investing public . . . and cause[d] them to purchase [International's] securities at artificially inflated prices." (Id. at 8.) Accordingly, this Court finds that neither Bald Eagle, Peters Co., Howard, Gintowt, nor District 65 are "substantial conflicting authorities" or that they present a basis for a "substantial likelihood" of reversal.

Accordingly, after carefully reviewing the cases cited by International, the cases cited in the October Order, the facts of this case, and the SEC Actions and the Shareholder Actions, this Court finds that International has not sufficiently demonstrated that there are "substantial conflicting authorities" or that there is a "substantial likelihood" of reversal.

The final section 1292(b) requirement is whether an immediate appeal may "materially advance the ultimate termination of the litigation." International contends that an immediate appeal will "materially advance" this case because it will ensure that the RICO claims will not need to be retried after a trial on the current issues. This contention, however, even if correct is not sufficient to grant certification. See Kirkland & Ellis v. CMI Corp., 1996 WL 674072, at *4 (N.D. Ill. Nov. 19, 1996); Resolution Trust Corp. v. Gravee, 1995 WL 678518, at *2 (N.D. Ill. Nov. 7, 1995). The risk of litigation after the remaining issues in a case are tried is present in all cases where the court dismisses some claims before trial. Id. Accordingly, this Court finds that International has not met the third section 1292(b) requirement.

Therefore, because this Court finds that International has not met all three of the section 1292(b) requirements, it must DENY the motion for immediate certification.

## CONCLUSION

For the reasons discussed herein, this Court DENIES Plaintiff International's Motion for Section 1292(b) Certification for Immediate Appeal of the October 8, 2004 Order [146-1].

It is so ordered.

ENTER:  _____
BLANCHE M. MANNING
U.S. DISTRICT COURT JUDGE

DATE: 2-3-05