UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

HOLLINGER INTERNATIONAL, INC. )
)
          **Plaintiff,**   )
)    Hon. Blanche M. Manning
v.                       )
)    Case No. 04 C 0698
)
HOLLINGER INC., et al.   )
)
          **Defendants.** )

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant Daniel W. Colson's Motion for Reconsideration [328-1] of this Court's denial of his Motion to Dismiss for Lack of Personal Jurisdiction in its Memorandum and Order of March 11, 2005 [315-1] ("the Order"). Plaintiff Hollinger International, Inc. ("International"or "the Company") brought the instant diversity action alleging that corporate and individual defendants, including Colson, used their positions as officers, directors, and controlling shareholders of International to "loot" hundreds of millions of dollars from the Company.[1] For the reasons set forth herein, this motion is likewise DENIED.

A motion to reconsider permits the court to alter or amend a prior ruling where: (1) it has "patently misunderstood a party"; or (2) there has been "a controlling or significant change in the law or facts." Bank of Waunakee v. Rochester Cheese Sales, Inc., 966 F.2d 1185, 1191 (7th Cir. 1990). Because such problems "rarely arise," however, a "motion to reconsider should be equally rare." Id. Requests to reconsider a prior ruling should not simply rehash previously raised arguments, Lewis v. Herman, 783 F. Supp. 1131, 1132 (N.D. Ill. 1991), and do not permit

---

[1] From 1995 to 2003, Colson was a director at International.

a party the opportunity to undo its own procedural failures or present new evidence or arguments "that could and should have been presented to the district court prior to judgment." Moro v. Shell Oil Co., 91 F.3d 872, 876 (7th Cir. 1996). This "court's orders [are not] 'mere first drafts, subject to revision and reconsideration at a litigant's pleasure.'" Thompson v. Perryman, No. 98 C 1596, 1998 WL 786221 (N.D. Ill. Nov. 6, 1998). Whether to grant a motion to reconsider "is entrusted to the sound judgment of the district court." Matter of Prince, 85 F.3d 314, 324 (7th Cir. 1996).

In denying Colson's Rule 12(b)(2) motion to dismiss, this Court held that it could properly assert personal jurisdiction over him based on: (1) his position as a director at International, whose "principal executive offices" were until 2004 located in Chicago, Illinois; and (2) allegations that he conspired to loot International with Defendants Black and Radler, who performed substantial acts in furtherance of the conspiracy in Chicago. Colson now asserts that this Court should reverse itself and grant his motion because the Order contains factual and legal errors. After reviewing the parties' submissions, the Order, and the relevant supporting case law, this Court finds that, while there were some minor factual misapprehensions in the Order, Colson has essentially repackaged arguments which this Court either directly or indirectly rejected the first time around. Nevertheless, this Court will briefly review Colson's current contentions with respect to the assertion of personal jurisdiction based on his position as a director.[2]

As detailed in the Order, this Court found that it has personal jurisdiction, consistent with the requirements of Due Process, over Colson and Defendant Perele, who was also a director but

---

[2] Because the Court finds that it may assert personal jurisdiction over Colson based on his directorship without running afoul of the Due Process Clause, it will not address Colson's "conspiracy theory" contention.

did not move for reconsideration, on the grounds that the claims against them arose out of their duties as directors of the Company, whose principal executive offices were in Illinois at the time the claims arose. Colson contends that the above holding is legally erroneous because:

> (A) it substitutes 'forseeability' or 'fair warning' for the 'purposeful availment' test essential to due process; (B) it eliminates any real Fourteenth Amendment limit to State power by treating the defendant's constructive knowledge of § 2-209(a)(12)[3] as a substitute for 'minimum contacts'; (C) it treats 'fictive' warning as 'fair' warning; and (D) it creates an exception to the [Seventh] Circuit's rule that the long-arm inquiry is 'wholly unnecessary' and 'superfluous'.

(Colson's Mem. at 3.) In essence, Colson asserts that this Court's decision violates the Due Process Clause of the Fourteenth Amendment as interpreted by International Shoe Co. v. Washington, 326 U.S. 310, 320 (1945), and it progeny.

After reviewing the Order, the parties' submissions, and the cases cited therein, this Court finds that Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985), dispenses with the above contentions. In Burger King, 471 U.S. 472-76, the Supreme Court further elaborated upon and delineated the "minimum contacts" test set forth in International Shoe. The Court noted that "where individuals 'purposely derive benefit' from their interstate activities, it may well be unfair to allow them to escape having to account [in those states] for consequences that arise proximately from such activities." Id. at 474. The test thus is whether it was foreseeable "that the defendant's conduct and connection with the forum State are such that he could reasonably anticipate being hauled into court there." Id. (emphasis added.) To determine when a defendant should reasonably anticipate litigation in the forum state, the Court looked to the "purposeful

---

[3] Under section 2-209(a), "[a]ny person whether or not a citizen or resident of this State . . . submits . . . to the jurisdiction of this State as to any cause of action arising from . . . (12) [t]he performance of duties as a director . . . of a corporation . . . having its principal place of business in this State." 735 ILCS 5/2-209(a)(12) (emphasis added).

availment requirement" set forth in Hanson v. Denckla, 357 U.S. 235, 253 (1958). Burger King, 471 U.S. at 474-75.

Under the "purposeful availment" test, the defendant must have more than "random, fortuitous, or attenuated contacts" with the forum state. Id. at 475. Instead, "the defendant himself" must have "purposefully avail[ed]" himself of "the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Id. (emphasis in original.) The reasoning behind this rule is that because a defendant's activities are "shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in the forum as well." Id. at 476.

In the context of the facts of this case – a non-resident director of a company whose principal place of business is located in the forum state – this Court has found (and the parties have cited to) only one case on point – Simmons v. J.C. Templeton, 684 So. 2d 529, 534 (La. Ct. App. 1997). In Simmons, the plaintiffs brought an action for fraud and misrepresentation in Louisiana against a company, which was incorporated in Delaware with its principal place of business in Louisiana, and its non-resident directors. Id. at 530-34. The non-resident directors moved to dismiss on the grounds that the court lacked personal jurisdiction because they did not live in Louisiana and attended no more than two board meetings in the state. Id. at 533. In denying this motion and finding that due process would not be violated, the court, relying on Burger King, held that the non-resident directors "purposefully availed themselves of the privilege of conducting business in [the state] by receiving salaries from a corporation with its principal place of business in [the state] and by attending a special board meeting [there]." Id. Therefore, "exercise of personal jurisdiction over the non-resident directors . . . is not based on

random, fortuitous, or attenuated conduct or the unilateral activity of another party or person, but on the conduct of the non-resident directors themselves." While this Court is not going to rely on a state court in Louisiana in interpreting the scope of the Due Process Clause, the Simmons decision is certainly reasonable in light of Burger King and the only opinion on point.

Here, in the Order, this Court found that by voluntarily accepting a directorship with International, a company whose principal executive offices were located in Chicago during the alleged looting, and deriving substantial benefits (many of which stemmed directly from Chicago[4]) from this relationship, Colson should have reasonably anticipated being subject to litigation in Chicago. Putting aside all legal rules (including section 2-209(A)(12) of the Illinois long-arm statute) and the fact that Colson is a licensed attorney and a very astute businessman, common sense tells a reasonable person that if you become a director (and thus assume all of the benefits and duties associated with such a position) of a company incorporated in Delaware with its principal executive offices in Chicago, there is a very real possibility that you could face litigation in either of these forums. Colson, however, has chosen to play ignorant and thus has violated the principle that "the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed." Burger King, 471 U.S. at 474. As such, this Court denies Colson's motion on the grounds that asserting personal

---

[4] International alleges that until December of 2001, International paid Colson his director's compensation from its Chicago bank account. Likewise, some of the money which Colson allegedly looted from International was paid to him through bank accounts in Chicago. Likewise, allegedly in furtherance of the conspiracy, Colson sent false and misleading corporate disclosure forms to International's Chicago corporate offices. Additionally, although board meetings were typically held in New York, Colson attended several meetings in Chicago. International also alleges that Colson conspired with Defendant Radler, who worked out of the Chicago office, to have International pay unreasonable management fees to Defendant Ravelston, which then passed along some of these fees to Colson.

jurisdiction on the basis of his directorship violates Due Process.

## CONCLUSION

For the reasons set forth above, this Court DENIES Defendant Daniel W. Colson's Motion for Reconsideration [328-1]. It is so ordered.

**ENTER:**    _____
                        **BLANCHE M. MANNING**
                        **U.S. DISTRICT COURT JUDGE**

**DATE:7/1/05**