# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| HOLLINGER INTERNATIONAL, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | 04 C 698 |
| HOLLINGER INC.; THE RAVELSTON ) | |
| CORP. LTD.; RAVELSTON ) | Magistrate Judge Maria Valdez |
| MANAGEMENT, INC.; CONRAD M. ) | |
| BLACK; F. DAVID RADLER; JOHN A. ) | |
| BOULTBEE; DANIEL W. COLSON; ) | |
| BARBARA AMIEL BLACK; and ) | |
| RICHARD PERLE, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion for a Protective Order Temporarily Postponing Certain Depositions. For the reasons that follow, Defendants' motion is denied.

## BACKGROUND

Plaintiff Hollinger International, Inc.'s ("Hollinger") 44-count complaint alleges that Defendants wrongfully diverted Plaintiff's cash and assets to themselves through, among other things, obtaining improper management fees, non-compete payments, broker fees, compensation in the form of salary and bonus payments, loans, and below-market transfers and purchases of Plaintiff's assets.

The parties began to exchange written discovery last fall, and early this year Hollinger served notices of depositions of individual defendants Black, Radler, Boultbee, Coulson, and Amiel Black.

The depositions were noticed for March and April 2005. After a meet-and-confer in February 2005, the parties agreed to postpone the depositions pending additional document discovery. On February 24, 2005, Plaintiff served amended notices, which scheduled the depositions for various dates between April 19 and May 17, 2005.

On March 21, 2005, the United States Attorney's Office ("USAO") publicly disclosed its criminal investigation of defendants Black, Radler, and Hollinger Inc., as well as unidentified "others," in the context of a motion to intervene and for a limited, temporary stay of discovery in another case, *Securities & Exchange Commission v. Black, et al.*, No. 04 C 7377 ("*SEC*").[1] According to the USAO's motion, the investigation relates to "whether the SEC defendants and others fraudulently diverted corporate assets and opportunities owned by Hollinger International to themselves and to companies that they controlled." (*SEC v. Black*, No. 04 C 7377, Gov't's Mot. to Intervene at 3 [Doc. No. 18].) The transactions being investigated include non-compete payments and related-party transactions. (*Id.* at 3-4.)

In its motion for a limited stay of discovery, the USAO asked the *SEC* court to prevent the SEC from producing a particular document to the *SEC* defendants, arguing that production of the document would impair its investigation. The USAO further claimed that merely identifying the document or explaining its significance would harm the ongoing criminal investigation. (*Id.* at 4-5.) The USAO's motion asked that production of the document be postponed until after August 1, 2005,

---

[1] The defendants in *SEC* are Black, Radler, and Hollinger Inc. The *SEC* complaint alleges that Black and Radler fraudulently diverted Hollinger's assets to themselves and to companies controlled by them, including Hollinger Inc., and that they fraudulent concealed their self-dealing from Hollinger's shareholders.

when "[t]he government anticipates that it will be better able to assess the outcome of this investigation." (*Id.* at 4.) The SEC did not oppose the USAO's motion.[2]

On March 29, 2005, the parties in the case at bar again met and conferred about Defendants' deposition schedule. Defendants stated that they did not want to go forward with their depositions in April and May, given the parties' outstanding discovery disputes and the pending USAO investigation. Plaintiff agreed to delay the depositions if Defendants would provide specific future dates when they could be taken, but the parties did not agree to a schedule. Two weeks later, at another meet-and-confer, Defendants agreed to begin their depositions in September 2005, but Plaintiff refused to delay them past May and June. Fact discovery in this case is set to close on November 30, 2005.

Defendants now bring this motion for a protective order, seeking to postpone their depositions because of the dilemma posed by the ongoing USAO investigation, *i.e.*, whether to testify and possibly incriminate themselves or to invoke their Fifth Amendment privilege and be faced with adverse inferences in the present case.[3] Defendants ask that the depositions be postponed

---

[2] The District Court granted the USAO's motion on April 27, 2005, and ordered the SEC not to produce the document at issue until August 1, 2005 or as otherwise ordered by the court. The order, however, expressly provides that no other discovery was to be stayed in the case. (*SEC v. Black*, No. 04 C 7377, Apr. 27, 2005 Minute Order [Doc. No. 48].)

[3] Defendants' motion also argues that their depositions should be stayed until Plaintiff has produced all of its documents and Defendants have had an adequate opportunity to review the production. The issues raised by Defendants, however, have since been resolved. Therefore, to the extent that the motion seeks to stay the depositions pending resolution of the parties' discovery disputes, it is moot. Plaintiffs apparently completed their document production in May, and there are no outstanding motions to compel Plaintiffs to produce any additional documents. Two months is a sufficient amount of time for Defendants' able counsel to have reviewed Plaintiffs' latest production. Any additional documents that may be produced after the parties exchange privilege logs will be minimal in comparison to the totality of the production and do not warrant a stay of the depositions.

3

"until the resolution of... the status of the USAO's criminal investigation." (Defs.' Mot. Protective Order at 11.)

## DISCUSSION

"'[A] district court possesses substantial discretion to control its docket,'" which includes the power to issue a stay of some or all proceedings. *Bd. of Trs. of Ironworkers Local No. 498 Pension Fund v. Nationwide Life Ins. Co.*, No. 04 C 821, 2005 WL 711977, at *9 (N.D. Ill. Mar. 28, 2005) (quoting *Employers Ins. of Wausau v. Shell Oil Co.*, 820 F.2d 898, 902 (7th Cir. 1987)). However, "'the granting of a stay is the exception, not the rule, and the party seeking the stay has the burden of demonstrating it is necessary.'" *Id.* (quoting *RLJCS Enters., Inc. v. Prof'l Benefit Trust, Inc.*, No. 03 C 6080, 2004 WL 2033067, at *2 (N.D. Ill. Sept. 2, 2004)).

Defendants argue that this Court should issue a protective order postponing their depositions in light of the ongoing USAO investigation because they are faced with a "Hobson's Choice" whether to testify and possibly incriminate themselves, or to assert their Fifth Amendment rights and be subjected to an adverse inference in the civil case. It is well settled that forcing a litigant to make this choice is not unconstitutional, and the pendency of criminal proceedings does not require a stay of the civil case. *See Baxter v. Palmigiano*, 425 U.S. 308, 318-19 (1976)); *Sec. & Exch. Comm'n v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980); *Nationwide Life Ins.*, 2005 WL 711977, at *9; *Cruz v. County of DuPage*, No. 96 C 7170, 1997 WL 370194, at *1 (N.D. Ill. June 27, 1997). The Court, however, may exercise its inherent power to grant a stay or to impose a protective order when the interests of justice so require. *See Dresser Indus.*, 628 F.2d at 1375 (citing *United States v. Kordel*, 397 U.S. 1, 12 n. 27 (1970)); *Cruz*, 1997 WL 370194, at *1; *see also* Fed.

4

R. Civ. P. 26(c)(2) ("[T]he court . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . that the disclosure or discovery may be had only on specified terms and conditions, including a designation of the time or place.").

Courts look to a number of factors in determining whether to stay a civil case based on the pendency of a similar criminal proceeding, including: (1) the posture of the criminal proceeding; (2) whether there is an overlap of issues in the civil and criminal proceedings; (3) whether both the civil and criminal proceedings are brought by the government; (4) the burden on defendants if a stay is not granted; (5) the potential prejudice to plaintiffs if the civil proceedings are delayed; and (6) the interests of the public, courts, and third parties in granting or denying a stay. *See Nationwide Life Ins.*, 2005 WL 711977, at *9; *In re Anicom Inc. Sec. Litig.*, No. 00 C 4391, 2002 WL 31496212, at *1 (N.D. Ill. Nov. 8, 2002); *Cruz*, 1997 WL 370194, at *2; *Nowaczyk v. Matingas*, 146 F.R.D. 169, 174 (N.D. Ill. 1993).[4] The Court will address each factor in turn.

### A. Status of Criminal Proceeding

In analyzing the status of the criminal case, the most significant issue is whether the investigation has ripened into an indictment. A defendant under indictment for a serious offense

---

[4] Defendants argue that focusing on the test for granting a stay ignores the fact that the motion seeks only a temporary postponement of their depositions, not a stay of the entire litigation. The test, however, has been applied to motions seeking limited discovery stays as well as complete stays of all civil proceedings, and Defendants offer no contrary authority. *See Jones v. City of Indianapolis*, 216 F.R.D. 440, 452 (S.D. Ind. 2003) (applying test to a motion for a limited stay of only certain categories of discovery); *Fidelity Nat'l Title Ins. Co. v. Nat'l Title Res. Corp.*, 980 F. Supp. 1022, 1024 (D. Minn. 1997) (applying test to a motion for a protective order limiting the scope of defendant's deposition).

based on the same matter as that in the civil case presents "the strongest case" for staying concurrent civil proceedings. *Dresser Indus.*, 628 F.2d at 1375-76.

> When a defendant has been indicted, his situation is particularly dangerous, and takes a certain priority, for the risk to his liberty, the importance of safeguarding his constitutional rights, and even the strain on his resources and attention that makes defending satellite civil litigation particularly difficult, all weigh in favor of his interest.

*Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc.*, 175 F. Supp. 2d 573, 577 (S.D.N.Y. 2001); *see Am. Express Bus. Fin. Corp. v. RW Prof'l Leasing Servs. Corp.*, 225 F. Supp. 2d 263, 265 (E.D.N.Y. 2002) (granting stay of discovery where defendants had already been indicted and had invoked their Fifth Amendment privileges); *Cruz*, 1997 WL 370194, at *4 (granting stay of all discovery in civil case against indicted defendants "because there is a distinct possibility that the parallel proceedings would undercut the defendants' privileges against self-incrimination"); *Volmar Distribs., Inc. v. N.Y. Post Co., Inc.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993) (finding that defendants "have a real and immediate interest in staying discovery" because an indictment based on the same factual background was currently pending against them); *Midas Int'l Corp. v. G.V. & G. Transp. Servs., Inc.*, No. 87 C 2180, 1987 WL 18916, at *2-3 (N.D. Ill. Oct. 19, 1987) (granting temporary stay of defendants' depositions and interrogatory responses in light of parallel criminal proceedings but refusing to grant an open-ended stay). *But see Digital Equip. Corp. v. Currie Enters.*, 142 F.R.D. 8, 13 (D. Mass. 1991) (denying defendants' requests to stay even though the subject matter of the civil case overlapped that of a pending criminal case and the risk of infringing defendants' Fifth Amendment rights was "high").

The case for staying civil proceedings, however, is "far weaker" when the defendant has not been indicted and thus "no Fifth Amendment privilege is threatened." *Dresser Indus.*, 628 F.2d at

1376; *see Sterling Nat'l Bank*, 175 F. Supp. 2d at 577 (holding that pre-indictment, "the likelihood that a civil party can make the necessary showing to obtain the 'extraordinary' remedy of a stay . . . is inevitably much reduced"); *Admiral Ins. Co. v. Fed. Sec., Inc.*, No. 94 C 5649, 1996 WL 139243, at *1 (N.D. Ill. Mar. 26, 1996) ("Where an indictment has not yet been returned or where there is no ascertainable time period within which the criminal prosecution is likely to be concluded, a stay of discovery in civil proceedings is more problematic."). Although courts have the discretion to stay civil litigation even in the absence of an indictment, "the consensus that a party seeking a stay bears a heavier burden when he has not yet been indicted derives logically from the balancing test set out by the courts of appeals that have considered the question." *Sterling Nat'l Bank*, 175 F. Supp. 2d at 577.

Accordingly, most courts have declined to stay civil proceedings when the defendant has not yet been indicted. *See Fed. Trade Comm'n v. Pac. First Benefit, LLC*, 361 F. Supp. 2d 751, 756 (N.D. Ill. 2005) (denying request for stay and noting that "other district courts have also reasoned that an indictment should be issued before a stay is granted"); *In re Anicom*, 2002 WL 31496212, at *2 (denying stay where criminal charges were expected within four months because "Defendants have only a threat of indictment"); *Nowaczyk*, 146 F.R.D. at 176 (denying stay in part because defendants had not been formally charged, and therefore "it is uncertain how long the requested stay of discovery would persist"); *Fidelity Nat'l Title Ins. Co. v. Nat'l Title Res. Corp.*, 980 F. Supp. 1022, 1024 (D. Minn. 1997) (denying motion for protective order to limit the scope of the defendant's deposition where an indictment was not expected for five months, explaining that "pre-indictment requests for a stay of civil proceedings are generally denied") (internal quotation and citation omitted); *Barry Farm Resident Council, Inc. v. United States Dep't of the Navy*, Nos. 96-

1450, 96-1700, 1997 WL 118412, at *3 (D.D.C. 1997) (holding that where no indictments had been issued, "[t]he alleged harm . . . is entirely speculative"); *Applied Materials, Inc. v. Semiconductor Spares, Inc.*, Nos. C95-20129, C95-20156, 1995 WL 261451, at *3 (N.D. Cal. Apr. 26, 1995) (finding that defendant's Fifth Amendment privilege is not negligible, but it is "'far weaker' than it would be if an indictment had been returned").

In this case, the status of the pending criminal investigation militates against granting even a temporary stay of Defendants' depositions. Only defendants Black and Radler are known to be under investigation by the USAO. Neither has been indicted, and it is unknown whether they will be, in August or at any other time. The USAO has stated only that it "will be better able to assess the outcome" of its investigation at some point after August 1. The USAO's assessment may result in an indictment of any or all of the defendants in this case. Alternatively, the USAO could decide that further investigation is necessary or that no indictments will issue. At this point, the Court cannot determine which of these outcomes is more likely. Boultbee, Coulson, and Amiel Black have not even been identified as subjects of the USAO's investigation, and thus the threat that these defendants will be indicted is even weaker.

Furthermore, contrary to Defendants' argument, they are not requesting only a "limited" or "brief" stay. Defendants have asked the Court to postpone their depositions "until the resolution of . . . the status of the USAO's criminal investigation involving certain defendants and unidentified 'others.'" (Defs.' Mot. Protective Order at 11.) As explained above, Defendant's suggestion that the status of the USAO's investigation is likely to be resolved on or shortly after August 1 is not supported by the record. Because the USAO has not announced that its investigation will be resolved within the next few weeks, or even months, Defendants are actually requesting an indefinite

8

stay of their depositions. Defendants have not established that such an open-ended stay is necessary or appropriate in this case. *See Sterling Nat'l Bank*, 175 F. Supp. 2d at 577-78 (denying stay because "[t]here is no indication whatever that the grand jury's investigation has reached a critical stage, . . . [and] there is nothing to suggest that indictments are imminent," making "the delay imposed on the plaintiff . . . potentially indefinite"); *Admiral Ins.*, 1996 WL 139243, at *1 (denying stay where the length of the criminal investigation was unknown, and thus the stay would be indefinite and potentially last for months); *cf. Jernryd v. Nilsson*, No. 84 C 7551, 1988 WL 53221, at *1 (N.D. Ill. May 16, 1988) (granting stay where an Assistant United States Attorney had given "specific advice" that the government's pending investigation "will conclude" in sixty days).

## B. Overlap of Issues

When there is substantial overlap of the issues involved in the civil and criminal proceedings, "the risk of impairing a party's Fifth Amendment rights is rather severe." *United States v. All Meat & Poultry Prods.*, No. 02 C 5145, 2003 WL 22284318, at *4 (N.D. Ill. Oct. 3, 2003); *see Admiral Ins.*, 1996 WL 139243, at *1 ("A stay of civil proceedings is most likely to be granted where the civil and criminal actions involve the same subject matter . . ."). *But see In re CFS-Related Sec. Fraud Litig.*, 256 F. Supp. 2d 1227, 1237 (N.D. Okla. 2003) (denying stay despite "essentially a complete overlap of issues" in the civil and pending criminal cases).

As described in the USAO's motion in the *SEC* case, the transactions under investigation are non-competition payments, the sale of Plaintiff's newspaper companies to other companies controlled by Black and Radler, and "other transactions" between Plaintiff and Black, Radler, and companies owned by those defendants. Therefore, any potential indictment would apparently overlap the issues in the present case to some extent. From the USAO's brief description of the

9

investigation, however, it cannot be said with certainty that the criminal investigation involves all of the same transactions referenced in the complaint. *See Sterling Nat'l Bank*, 175 F. Supp. 2d at 578 ("While it can be assumed on this record that there is substantial overlap between the allegations in this complaint and the grand jury's investigation, . . . the Court has no way of knowing whether the grand jury's inquiry has expanded or will expand beyond these allegations."). The overlap of issues is even less clear for defendants Boultbee, Coulson, and Amiel Black, who may or may not be subjects of the USAO's investigation.

### C.  Government Involvement in the Civil Case

The government is not a party to this litigation, and thus there is no danger that the USAO is using the civil case "to escalate the pressure on defendants by manipulating simultaneous civil and criminal proceedings, both of which it controls." *Sterling Nat'l Bank*, 175 F. Supp. 2d at 578-79; *see Admiral Ins.*, 1996 WL 139243, at *1 (noting that "the most compelling argument for a stay" exists when both the criminal and the civil cases are brought by the government).

Defendants argue, however, that Plaintiff has admitted its cooperative relationship with the government. But as this Court has previously held, there is no evidence that this case is being used as a "stalking horse" for the USAO's investigation. (1/19/05 Op. at 17 n.10 [Doc. No. 202]); *see Sterling Nat'l Bank*, 175 F. Supp. 2d at 578 ("There is no reason to assume that [the plaintiff's] civil case is simply a stalking horse for the government's criminal inquiry, rather than a good faith effort to obtain compensation for its own private injuries."). Furthermore, as will be explained below, the Court has the power to limit Plaintiff's alleged inclination to cooperate with the government through the use of a protective order.

10

### D. Burden on Defendants

The Court is mindful of the burden on any defendant who must choose whether to testify and risk incriminating himself or to invoke his Fifth Amendment privilege and be faced with an adverse inference in the civil case. This dilemma alone, however, is not sufficiently prejudicial to warrant a stay. *See Baxter*, 425 U.S. at 318 ("[T]he Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them . . . ."); *Dresser Indus.*, 628 F.2d at 1374 (explaining that civil and criminal proceedings frequently overlap and that parallel proceedings are not objectionable "in the absence of substantial prejudice to the rights of the parties involved"). In this case, Defendants have not shown that their burden "is more pointed or difficult than in any other case of parallel proceedings, and it is universally agreed that the mere pendency of a criminal investigation standing alone does not require a stay." *Sterling Nat'l Bank*, 175 F. Supp. 2d at 578.

First, Defendants have not demonstrated the extent to which their Fifth Amendment rights will be implicated if they testify, making it difficult for the Court to determine what if any burden they may actually face. *See Sterling Nat'l Bank*, 175 F. Supp. 2d at 578 ("[S]ince depositions have not yet taken place, there is no way of measuring with any precision what questions defendants may refuse to answer, or what damage may be done to their position in the civil case by any assertions of privilege they might choose to make."). While it seems likely that certain portions of Defendants' testimony could be incriminating, it is also likely that Defendants could answer a number of questions without being forced into the incrimination/adverse inference dilemma. *See In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 663-64 (7th Cir. 2002) (holding that a defendant does not have "carte blanche by virtue of the Fifth Amendment's self-incrimination clause to refuse

11

to answer questions. . . . To be privileged by the Fifth Amendment to refuse to answer a question, the answer one would give if one did answer it (and answer it truthfully) must have *some* tendency to subject the person being asked the question to criminal liability."); *cf. Jones v. City of Indianapolis*, 216 F.R.D. 440, 452 (S.D. Ind. 2003) (granting a limited stay of discovery where defendants could give little if any non-incriminating testimony and thus allowing depositions to proceed would be "an inefficient use of resources").

Second, any prejudice to Black and Radler will be minimal. In his answer to the complaint, Radler invoked the privilege in response to each allegation, and therefore he is already subject to a negative inference in the civil case. *See Brenner v. Commodity Futures Trading Comm'n*, 338 F.3d 713, 717-18, 720 (7th Cir. 2003) (affirming administrative decision in which an adverse inference was drawn from defendant's assertion of privileges in his answer to the complaint). For his part, Black asserted the privilege in refusing to cooperate with the SEC.[5] *Hollinger International Inc. v. Black*, 844 A.2d 1022, 1049 (Del. Ch. 2004); *see In re Anicom*, 2002 WL 31496212, at *2 (N.D. Ill. Nov. 8, 2002) ("Defendants have already invoked the Fifth Amendment privilege in this litigation during discovery and before the Securities and Exchange Commission. Thus, it is disingenuous for

---

[5] In a footnote, Plaintiff also contends that Black may have waived his Fifth Amendment rights by answering the complaint's allegations rather than invoking the privilege. Although a party may waive the privilege, "courts must 'indulge every reasonable presumption against waiver of fundamental constitutional rights.'" *Emspak v. United States*, 349 U.S. 190, 198 (1955) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). Whether or not the Fifth Amendment privilege has been waived depends upon the particular facts and circumstances of the case. *Moran v. Burbine*, 475 U.S. 412, 421 (1986). Plaintiff's passing argument does not establish that the facts of this case require a blanket finding of waiver. If Black ultimately refuses to testify about statements he made in his answer, Plaintiff could seek appropriate relief at that time. *See Boim v. Quranic Literacy Inst.*, No. 00 C 2905, 2004 WL 2700494, at *3 (N.D. Ill. Feb. 9, 2004) (striking defendant's answer and affirmative defenses after he refused to testify about the statements he made in the answer).

12

Defendants to now argue that they will be prejudiced for exercising a right that they have repeatedly invoked in the past.").

Finally, Defendants' argument that they will be limited in their ability to prepare for their depositions if they are forced to testify before reviewing the document withheld in the *SEC* case is not persuasive. There is no suggestion that Plaintiff has access to the *SEC* document. Indeed, it can be assumed that Plaintiff does not, as the USAO has not moved to intervene and stay production of the document in the present case. Defendants have failed to demonstrate why they cannot adequately prepare for their depositions unless they see a document that Plaintiff does not possess. Although reviewing the document undoubtedly will assist Defendants in determining the scope of potentially incriminating testimony, they have offered no support for the proposition that they have a right to review any or all of the USAO's evidence before sitting for a deposition in a parallel civil proceeding. Furthermore, it is not clear how requiring Defendants to be deposed before seeing the document would "permit[] Plaintiff to use the threat of criminal prosecution to obtain an unfair advantage in this litigation." (Defs.' Reply at 6.) Defendants do not explain how Plaintiff would be in a better position to make such a threat if the depositions take place before the *SEC* court allows the document to be produced to Defendants.

### E. Prejudice to Plaintiff

Defendants maintain that Plaintiff will not be harmed from a stay in part because there is other discovery to be completed in this case, including other depositions. The Court is persuaded, however, that Plaintiff will be prejudiced if the depositions of the most important witnesses in the case are postponed until shortly before the November 30 close of fact discovery. *Cf. Doe v. City of Chicago*, 360 F. Supp. 2d 880, 882 (N.D. Ill. 2005) (noting that the motion to stay was "brought
13

early in the litigation with little actual discovery having taken place"). As Plaintiff contends, taking Defendants' depositions early could ultimately reduce the overall scope of discovery. Because Defendants have the most direct knowledge of many important facts in the case, the testimony of other witnesses with more attenuated connections to the transactions at issue may not be necessary.

Defendants further contend that Plaintiff will not be harmed by the delay because it has already conducted a lengthy internal investigation of the facts alleged in the complaint, including interviews with defendants Boultbee, Coulson, and Radler. But these interviews are not adequate substitutes for the requested depositions. Putting aside the fact that Plaintiff did not interview Black, Plaintiff's interviews of the other defendants were not examinations under oath with the benefit of substantial prior written discovery. Similarly, any investigative channels previously explored by Plaintiff do not eliminate the need to depose Defendants themselves.

### F.  Interests of the Court, the Public, and Third Parties

The interests of the public, the court, and third parties also caution against granting a stay. First, the Court has an interest in the speedy resolution of its cases, and "[t]his interest is enhanced in complex litigation." *In re CFS*, 256 F. Supp. 2d at 1241; *see Applied Materials*, 1995 WL 261451, at *4; *Digital Equip.*, 142 F.R.D. at 12. Second, the public has an interest in resolving this case, which relates to the alleged fraud of a public company. *See In re Anicom*, 2002 WL 31496212, at *2; *Applied Materials*, 1995 WL 261451, at *4. A strong public interest in favor of granting a stay may be shown where the government has made or joined in the request, but the USAO has not done so in this case. *See In re CFS*, 256 F. Supp. 2d at 1242; *cf. Jones v*, 216 F.R.D. at 452 (expressing concern that permitting discovery to go forward could taint the pending criminal investigation).

14

A final factor militating against a stay is Black's pursuit of claims against third parties, whose rights will be prejudiced if the stay is granted. *See In re CFS*, 256 F. Supp. 2d at 1239 ("[T]o the extent that [the defendant] is still pursuing cross-claims and third-party claims, it would be manifestly unfair to grant him the benefit of participating in discovery of other parties while enjoying the protections of a stay.").

Defendants have therefore failed to demonstrate that granting a temporary stay of their depositions is necessary. The Court finds that Defendants' Fifth Amendment concerns can instead be addressed by a less drastic remedy, the entry of a protective order sealing those portions of Defendants' deposition testimony that overlap with the anticipated criminal investigation from those who are or will be involved in the investigation. *See In re CFS*, 256 F. Supp. 2d at 1241; *Fidelity Nat'l Title Ins.*, 980 F. Supp. at 1025 & n.1; *Applied Materials*, 1995 WL 261451, at *3; *Digital Equip.*, 142 F.R.D. at 15 n.11 & 12.

## CONCLUSION

For the reasons set forth above, Defendants' Motion for a Protective Order Temporarily Postponing Certain Depositions [Doc. No. 332] is denied. The parties are ordered to submit to the Court an agreed protective order consistent with this opinion and the cases cited therein within five days of the date this order is entered. This matter is set for status on December 15, 2005, at 9:30 a.m.

**SO ORDERED.**  **ENTERED:**

Dated: July 15, 2005

_____
**HON. MARIA VALDEZ**
**United States Magistrate Judge**