# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| HOLLINGER INTERNATIONAL, INC. ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | | |
| ) | | |
| HOLLINGER, INC., et al., ) | No. 04 CV 698 | |
| Defendants. ) | Judge Blanche M. Manning | |
| _____) | | |
| ) | | |
| THE RALVESTON CORPORATION ) | | |
| LIMITED, et al., ) | | |
| Third Party Plaintiffs, ) | | |
| ) | | |
| v. ) | | |
| ) | | |
| HORIZON PUBLICATIONS, INC., et al. ) | | |
| Third Party Defendants. ) | | |

## MEMORANDUM AND ORDER

From 1999 through 2001, Hollinger International, Inc. sold a number of newspapers it owned to third-party defendants the court will collectively refer to as Bradford and Horizon. As it turned out, Bradford and Horizon were controlled by officers and directors of Hollinger, including former chief executive officer Conrad Black and former president and chief operating officer David Radler. According to Hollinger, Black, Radler, and others looted Hollinger by, among other things, causing Hollinger to sell the newspapers to Bradford and Horizon at well-below market prices. Hollinger sued alleging numerous claims against Black and Radler, including breach of fiduciary duty. It also sued two other corporations that Black and Radler controlled—Ralveston Corporation Limited and Ralveston Management, Inc. (collectively "Ralveston")—alleging that Black and Radler acted in their capacities as agents of Ralveston

when they duped Hollinger into selling the newspapers to Bradford and Horizon. Although Hollinger's second amended complaint alleges no claims against Bradford and Horizon, Ralveston filed a third-party complaint against them for contribution and unjust enrichment. Bradford and Horizon have moved to dismiss. For the reasons that follow, the court grants Bradford and Horizon's motions.

## ANALYSIS

*Contribution Claim*

In the underlying suit, Hollinger contends that Black, Radler, and others caused Ralveston to loot Hollinger to the tune of millions of dollars by (1) causing Hollinger to make unwarranted payments to Ralveston, (2) causing Hollinger to make loans to Ralveston at below-market rates, and (3) causing Hollinger to sell to Bradford and Horizon numerous newspapers at below-market prices. The defendants responded by filing a number of third-party complaints. In one, Black and Radler sought contribution from members of Hollinger's audit committee, contending that if Black and Radler had breached their fiduciary duties, then the audit committee members were equally liable for not preventing the breaches and the looting.

The court concluded that even though Delaware law governed the underlying breach of fiduciary claims because Hollinger was a Delaware corporation, Illinois law governed the contribution claims because Illinois had the more significant relationship to the allegedly wrongful conduct. *See Miller v. Long-Airdox Co.*, 914 F.2d 976, 978 (7th Cir. 1990) (Illinois has adopted the most significant relationship test of the Restatement (Second) of Conflict of Laws to determine what law applies to tort claims, including third-party claims for contribution). Because Illinois law does not permit contribution premised on claims of breach of fiduciary duty,

the court granted the audit committee members' motion to dismiss. *See St. Paul Fire & Marine Ins. Co. v. Great Lakes Turnings,* Ltd., 774 F. Supp. 485, 488 (N.D. Ill. 1991) (under Illinois law, contribution is not available for breaches of fiduciary duty).

The question now is whether Illinois law also governs the contribution claims against Bradford and Horizon because, if it does, those claims must also be dismissed. The contribution claims against Bradford and Horizon are premised on the sale of Hollinger's newspapers as orchestrated by Ralveston (through Black and Radler), so the court must determine what jurisdiction has the more significant relationship to those sales. The factors relevant under § 145 include: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered. *See Esser v. McIntyre*, 661 N.E.2d 1138, 1141 (Ill. 1996) (citing Restatement (Second) of Conflict of Laws § 145(2)(a)-(d)).

The court previously determined that Illinois had the more significant relationship to the allegedly wrongful conduct of Black, Radler, and the other defendants that was alleged in Hollinger's second amended complaint. Applying § 145 of the Restatement (Second) of Conflict of Laws, the court reasoned that Illinois had the more significant relationship because that was where Hollinger's corporate offices and the offices of its principal executives were located, where it maintained its corporate minutes and books, and where it operated 100 newspapers and employed more than 1000 people. The court also determined that many of the activities comprising the alleged breaches of fiduciary duty occurred in Illinois.

However, that conclusion is not dispositive of this matter because the earlier motion to dismiss encompassed claims based upon a broader range of conduct than at issue here. For instance, the claims at issue in the earlier motion involved Hollinger's unwarranted payments to Ralveston, as well as its below-market rate loans to Ralveston. Nevertheless, the court also took into account the allegedly wrongful sale of Hollinger's newspapers, which was effectuated through a series of transactions centered in Illinois. Specifically, according to the underlying complaint, Black and Radler concocted the scheme to sell Hollinger's newspapers at cut-rate prices, which Radler carried out from his office at the recently-demolished Chicago Sun-Times building. Second Amended Complaint at ¶ 58. *See County of McHenry v. Ins. Co. of the West*, 438 F.3d 813, 817 (7th Cir. 2006) (for purposes of resolving a motion to dismiss, a court accepts as true the well-pleaded facts in the complaint); *see also Amerifreight v. APL Land Transport. Servs., Inc.*, No 96 C 1547, 1997 WL 250484, at *1 (N.D. Ill. Feb. 20, 1997) (allegations in both third-party complaint *and* underlying complaint accepted as true on motion to dismiss). Other executives involved in the sales were also "physically officed" in Chicago. Second Amended Complaint at ¶ 57.

Yet Ralveston contends that Canadian law governs the contribution claims because it has a more significant relationship to the sales of the newspapers than does Illinois. The Canadian connections Ralveston identifies are: (1) Ralveston's principal office was located in Toronto; (2) it was subject to the Business Corporations Act of Ontario; (3) it maintained its books and records in Toronto; and (4) its employees operated out of Toronto, where its day-to-day operations occurred. Black and Radler also lived in Canada and Black had an office there.

Ralveston argues that these connections to Canada are more significant than the fact that the sale of Hollinger's newspapers to Bradford and Horizon occurred in Illinois. In support, Ralveston points out that any liability for breach of fiduciary duty that Ralveston bears is the result of its role as Black and Radler's employer, not as a result of any wrongdoing it committed itself. In other words, its liability will be grounded in *respondeat superior*. Ralveston contends that because its liability is premised on *respondeat superior*, that the factors most significant under § 145 involve the relationship between Ralveston, Black, and Radler, which was centered in Canada.

The court acknowledges the allegations that Ralveston operated primarily in Canada, that its books and records were there, and that its day-to-day operations occurred there. But those alleged facts constitute just one of the four factors under § 145, and must be balanced against the remaining factors under § 145. *See F.D.I.C. v. Wabick*, 214 F. Supp. 2d 864, 872 (N.D. Ill. 2002) (choice-of-law analysis under § 145 requires balancing of factors). Each of the remaining three factors involve either the place of the wrongful conduct and resulting injury, or the place where the relationship between the parties was centered. The court previously concluded that the sale occurred in Illinois, that the parties participated in the conduct in Illinois, and therefore Illinois had the more significant contact. Because the majority of factors favor the application of Illinois law, while only one factor even hints at a connection to Canada, the court concludes that, on balance, Illinois has the stronger connection to the allegedly improper newspapers sales.

Ralveston's arguments about *respondeat superior* are a red herring. The relationship between *parties* is the focus of § 145, not the relationship between parties (Ralveston) and non-parties (Black and Radler). Furthermore, *respondeat superior* is merely the theory of liability

under which Ralveston may be liable for the wrongful conduct of its agents (Black and Radler)—it is not the wrongful conduct itself. The alleged wrongful conduct consisted of below market-price sales of Hollinger newspapers to Bradford and Horizon and, as discussed above, the jurisdiction with the most significant relationship to that conduct is Illinois.

Accordingly, because Illinois law governs Ralveston's claims for contributions, but does not allow contribution based upon claims for breach of fiduciary duty, the claims for contribution are dismissed.

*Unjust Enrichment*

Alternatively, Ralveston alleges claims of unjust enrichment. According to Ralveston, if it breached its fiduciary duty to Hollinger by looting Hollinger's newspapers, Bradford and Horizon were unjustly enriched because they bought the newspapers at a deep discount. In order to recover under a theory of unjust enrichment under Illinois law (the only law the parties cite), the plaintiff must show that the defendant has unjustly retained a benefit to the plaintiff's detriment. *See HP Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679-80 (Ill. 1989). When the benefit was conferred by a third-party (Hollinger), the plaintiff must establish that: (1) the benefit was mistakenly conferred on the defendant (Bradford & Horizon) rather than the plaintiff (Ralveston); (2) the benefit was conferred on the defendant as a result of the defendant's wrongful conduct; or (3) the plaintiff's claim to the benefit was better than the defendant's. *See Asch v. Teller, Levit & Silvertrust, P.C.*, No. 00 CV 3290, 2003 WL 22232801, at *7 (N.D. Ill. Sept. 26, 2003). Under each scenario, the plaintiff may recover under the theory of unjust enrichment only if it can show that it—rather than the defendant—is entitled to the

benefit. *Id.* (theory of unjust enrichment is not applicable where "plaintiff is attempting to recover money to which it is not entitled").

Based upon the allegations, Ralveston may prove no set of facts consistent with its complaint that would entitle it to unjust enrichment. *See Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 714-15 (7th Cir. 2006) ("A plaintiff pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits.")  The newspapers at issue were, by all accounts, owned by Hollinger, not Ralveston.  Therefore, their allegedly wrongful sale occurred to the detriment of Hollinger, not Ralveston.  Under no set of facts was Ralveston entitled to the newspapers.  Accordingly, it may not maintain a claim against Bradford and Horizon for unjust enrichment.  *Asch*, 2003 WL 22232801, at * 7 ("The court cannot conclude that the Illinois Supreme Court intended to create a claim for unjust enrichment where a plaintiff claims damages that rightfully belong to a third party.")

**Conclusion**

For the preceding reasons, the court grants with prejudice the motions filed by Horizon Publications, Inc. [614-1] and Bradford Publishing Company [618-1] to dismiss the third-party complaint of Ralveston Corporation Limited and Ralveston Management, Inc.  The parties shall report for a status hearing March 15, 2007, at 11:00 a.m., as scheduled.

ENTER:

DATE:  December 27, 2006

Blanche M. Manning
United States District Judge