

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HOLLINGER INTERNATIONAL, INC. | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| HOLLINGER INC.; THE RAVELSTON CORP. LTD.; RAVELSTON MANAGEMENT INC.; CONRAD M. BLACK; F. DAVID RADLER; JOHN A. BOULTBEE; DANIEL W. COLSON; BARBARA AMIEL BLACK; and RICHARD N. PERLE, | ) ) ) ) ) ) ) ) ) | No. 04 C 698  Magistrate Judge Maria Valdez |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Hollinger, Inc.'s ("Inc.") motion for leave to file a counterclaim against Plaintiff Hollinger International Inc. ("International") [Doc. No. 603]. For the reasons that follow, Inc.'s motion is granted in part and denied in part.

## BACKGROUND

Plaintiff International filed its original complaint against various defendants, including Inc., on January 28, 2004. Inc.'s answer to International's second amended

complaint was filed on April 25, 2005. Inc.'s answer did not include any counterclaims against International.

Inc. now moves for leave to file counterclaims against International pursuant to Federal Rules of Civil Procedure ("Rules") 13 and 15. Inc.'s counterclaims allege that International was involved in a scheme along with Inc.'s co-defendants Conrad Black and The Ravelston Corp. to drive down Inc.'s value by stripping Inc. of its operating assets through two transactions in 1995 and 1997. Inc. alleges that in 1995, International purchased Inc.'s controlling interest in London's *The Daily Telegraph* for a price well below market value for the shares. Inc. also alleges that in 1997, Inc.'s remaining operating assets, the Canadian newspaper group, were diverted to International, leaving Inc. with far less than market value for the assets.[1]

In its motion, Inc. alleges that it first learned about International's misconduct in relation to these asset transfers in late 2005. Inc. claims that it did not know or have any reason to know of the wrongdoing before that time because: (1) many documents that disclosed the alleged misconduct were unavailable to it until recent discovery in this case; and (2) throughout the time of the alleged wrongdoing and until late 2004, Inc. was controlled and dominated by co-defendant Black and his associates. According to Inc., completely independent directors were not appointed until July and August of 2005. Inc. alleges that it filed the present motion as soon as it could after having notice of its possible claims and conducting a reasonable investigation.

---

[1] In a separate lawsuit previously filed in a Canadian court, Inc. asserted claims arising from essentially the same facts set forth in its proposed counterclaims against Black, Ravelston, and other Canadian entities. Inc. states that it wishes to bring these claims as part of this lawsuit as well because International is a Delaware corporation with offices in Chicago, and the facts at issue in the counterclaims are directly related to International's claims against Inc. in the second amended complaint.

2

International responds that the motion should be denied because: (1) Inc.'s delay in filing the counterclaims is inexcusable; (2) the late addition of counterclaims would be unduly prejudicial to International; and (3) the counterclaims are futile.

## DISCUSSION

Where, as in this case, there is no Rule 16(b) scheduling order limiting the time to amend pleadings, a proposed amendment should analyzed under Rule 15(a). *See Ocean Atl. Woodland Corp. v. DRH Cambridge Homes, Inc.*, No. 02 C 2523, 2003 WL 22848968, at *2 (N.D. Ill. Dec. 1, 2003); *Caliber One Indem. Co. v. Millard Chi. Window Cleaning, LLC*, No. 04 C 2424, 2005 WL 1206472, at *3 (N.D. Ill. May 12, 2005) (citing *Campania Mgmt. Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 848-49 n.1 (7th Cir. 2002)).

Rule 15 governs amendments to pleadings and provides: "A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served . . . . Otherwise a party may amend the party's pleading only by leave of court . . .; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a); *see also* Fed. R. Civ. P. 13(f) ("When a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, the pleader may by leave of court set up the counterclaim by amendment.").

Whether to grant or deny a pleading amendment is committed to the discretion of the trial court. *See King v. Cooke*, 26 F.3d 720, 723 (7th Cir. 1994). Courts are instructed to "freely allow pleading amendments 'in the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue

3

prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment.'" *Id.* (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). The Court therefore must apply a balancing test to the parties' competing interests: the movant's right to have its claims adjudicated on the merits and the hardship to the movant if the amendment is not allowed versus the prejudice to the opposing party if the amendment is allowed. *See Ameritech Mobile Commc'ns, Inc. v. Computer Sys. Solutions, Inc. (In re Ameritech Corp.)*, 188 F.R.D. 280, 283 (N.D. Ill. 1999); *Am. Broad. Co., Inc. v. Maljack Prods., Inc.*, No. 97 C 6510, 1998 WL 325209, at *2 (N.D. Ill. June 9, 1998).

## A.    Undue Delay

The movant has the burden to show its delay in seeking the pleading amendment is justified. *In re Ameritech Corp.*, 188 F.R.D. at 286. "[D]elay alone will not generally justify denying a motion to amend a pleading absent a showing of prejudice from the delay." *King*, 26 F.3d at 723. The longer the delay, however, "'the greater the presumption against granting leave to amend.'" *Perrian v. O'Grady*, 958 F.2d 192, 194 (7th Cir. 1992) (citation omitted); *see Am. Broad. Co.*, 1998 WL 325209, at *2 ("[T]he longer a party has delayed in amending the complaint, the less prejudice the opposing party must show to justify denial of leave to amend.").

Where the claim was previously unknown or could not have been added earlier, courts are more likely to find excusable delay. *See Ramada Franchise Sys., Inc. v. Royal Vale Hospitality of Cincinnati, Inc.*, No. 02 C 1941, 2004 WL 2966948, at *4 (N.D. Ill. Nov. 24, 2004); *Am. Broad. Co.*, 1998 WL 325209, at *2; *see also Cohn v. Taco Bell Corp.*, No. 92 C 5852, 1993 WL 390176, at *3 (N.D. Ill. Oct. 1, 1993) ("[W]here the proposed causes of action are related to the claims contained in the initial complaint, and

where the need to amend d[oes] not become apparent until after some discovery is completed, the general rule is to allow the movant to amend its complaint.").

Inc. argues that it did not unduly delay in filing its counterclaims, because it learned of its claims against International only in late 2005, and it filed the present motion after it had a reasonable opportunity to conduct an investigation of its potential claims. International responds that Inc.'s delay in seeking to add the counterclaim is not justified.

First, International contends that Inc. knew or should have known about its counterclaim when it filed its answer to the second amended complaint in April 2005. International states that Inc. and its attorneys had numerous documents relating to its counterclaim by at least January 6, 2005. Second, International argues that Inc.'s Litigation Committee was operating independently since at least June 2004, and five of the six Inc. directors were independent as of November 2004.

According to Inc., however, although Black and his associates were removed from the board in November 2004, they continued to occupy Inc.'s headquarters until May 2005. In addition, on September 3, 2004, a Canadian court appointed an Inspector pursuant to a request from a minority shareholder to review, among other things, related-party transactions involving Inc. The Inspector issued its 433-page report six months after Inc.'s answer to the second amended complaint was due. According to Inc., the report "touched on" many of the underlying facts in the counterclaims, including the transfer of certain of Inc.'s assets to International. Furthermore, Inc. was not led to investigate certain payments made by International to Inc. until the United States Attorney's Office asked Inc. to explain the payments in fall 2005.

A new slate of directors assumed control of Inc. in July and August 2005. According to Inc., in around November 2005, these directors received the Inspector's report as well as the results of Inc.'s investigation prompted by the United States Attorney's Office's questions and immediately took action to determine what wrongdoing may have occurred at Inc., investigate potential causes of action available to Inc., and institute proceedings against any parties responsible for such wrongdoing. Inc. contends that this follow-up was extremely complex and time-consuming, requiring an analysis of the millions of documents that had at that time been produced in this case, as well as the materials underlying the report of the Inspector. Inc. acknowledges that some of the documents referenced in its counterclaims were available to it when it filed its answer in April 2005. Inc. however claims that those documents were "only pieces of the puzzle" at the time, and Inc. was not aware of all of the information necessary to support its allegations of wrongdoing against International.

The Court accepts Inc.'s representation that it was not put on notice of its potential claims until some time in late 2005, and further agrees that investigation of its potential claims was justified and necessary. Accordingly, Inc.'s motion for leave to amend will not be denied based upon unnecessary delay.

## B.     **Prejudice to International**

The movant has the burden of showing that its opponent will not be prejudiced by the amendment. *See King*, 26 F.3d at 724. "Prejudice to the opposing party is the most important factor in determining whether to allow an amendment to a complaint." *In re Ameritech Corp.*, 188 F.R.D. at 283. Of course, nearly every pleading amendment results in some prejudice to the opponent. *See Ocean Atl. Woodland Corp.*, 2003 WL 22848968,

at *2; *In re Ameritech Corp.*, 188 F.R.D. at 283. "The correct inquiry then is whether the proposed delay will result in undue prejudice to the opposing party." *Ocean Atl. Woodland Corp.*, 2003 WL 22848968, at *2.

Undue prejudice may exist where a proposed amendment brings new and separate claims, adds new parties, or would require substantial additional discovery. *See id.*; *see also King*, 26 F.3d at 724 (explaining that in certain cases, the timely assertion of a defense, *i.e.*, statute of limitations, is so crucial that the prejudice "flows directly from the tardy amendment"); *SmithKline Beecham Corp. v. Pentech Pharms., Inc.*, No. 00 C 2855, 2002 WL 1303137, at *3 (N.D. Ill. June 13, 2002) (finding prejudice where the new claim "constitutes an entirely new theory of the case, requiring a new defensive strategy, and is not merely a change in the allegations of the complaint"); *In re Ameritech Corp.*, 188 F.R.D. at 283 (finding prejudice where defendant sought a counterclaim after discovery was closed and additional discovery would be necessary); *Ocean Atl. Woodland Corp.*, 2003 WL 22848968, at *3 (holding there was undue prejudice where extensive additional discovery was necessary and fact discovery was essentially closed).

However, the fact that some additional discovery will be necessary is not reason by itself to deny a motion to amend. *Cohn*, 1993 WL 390176, at *3; *see also Ash v. Theros Int'l Gaming, Inc.*, No. 99 C 5140, 2001 WL 869621, at *3 (N.D. Ill. Aug. 1, 2001) (holding that there was no undue prejudice where co-defendant had prior notice of the potential cross-claim against it, and discovery was not due to close for seven months).

Inc. argues that International will not be prejudiced at all by the amendment because this Court entered a complete stay of discovery in this case on February 28, 2006, pending the completion of criminal proceedings against certain defendants, and a

7

stay of all depositions has been in effect since September 6, 2005. According to Inc., even though certain additional document discovery may be necessary, that discovery will not impede the progress of the case because document discovery was not completed before the Court entered its stay. Furthermore, only one minor witness had been deposed before the deposition stay was entered.

International contends that the transactions at issue in the proposed counterclaims are not at issue in the second amended complaint, and therefore it would have to conduct extensive additional discovery. Furthermore, International argues that it would have to redo much of the discovery that has already been completed in the case, and that it would incur considerable costs by having to re-review documents relevant to Inc.'s counterclaims. Finally, International claims the delay has impaired its ability to obtain evidence to defend against the counterclaims. International states that it has sold many of the newspapers at issue in the counterclaims since April 2005, and due to the loss of employees in its offices in Toronto and New York, it would be substantially burdensome to search for evidence related to the 1995 and 1997 Transactions referenced in the counterclaims.

International further argues that allowing the amendment would delay depositions and trial in this case, which would be prejudicial to both International and the courts. International contends that it expected to complete depositions immediately after the stay of discovery was lifted, but the additional document discovery and expected discovery disputes could delay the completion of depositions. International also expresses concern that the defendants in Inc.'s Canadian lawsuit might implead International for contribution, forcing International to defend itself in two different forums. Finally,

International suggests that because many of Inc.'s proposed counterclaims are governed by Canadian law, allowing the counterclaims will unnecessarily complicate this litigation.

Inc. responds that International will suffer no more prejudice now than it would have if Inc. had filed its counterclaims in April 2005. First, the case is not near the completion of discovery, let alone near trial. The criminal trial has only recently begun and is expected to last several months, during which discovery this case will remain dormant.

Inc. also argues that International has overstated the anticipated cost of additional discovery in this case. According to Inc., International's search for documents occurred long before April 2005, and most of its documents were produced well before that time. Thus, any prejudice to International caused by the need to redo discovery is no greater now than it would have been in April 2005, when Inc. filed its answer to the second amended complaint. Moreover, Inc. points out that the documents already reviewed by International have been put into electronic format and are coded. International therefore will not need to re-review all of the millions of documents that have been produced in this case; instead, it could significantly limit the universe of documents through the use of database searches. According to Inc., International's ability to perform such focused searches is demonstrated by its detailed description of many of the documents underlying the counterclaim in its response to Inc.'s motion.

It is clear, and perhaps inevitable, that International will suffer some prejudice if Inc. is allowed to plead the counterclaims. However, the issue for the Court to decide is whether the prejudice is caused by the *delay* in pleading, *i.e.*, whether International is

unduly prejudiced by allowing the counterclaims to be added now, rather than in April 2005 when they could have been filed with the answer to the second amended complaint.

The Court does not doubt International's assertion that it will need to re-review discovery previously produced in this case. However, it appears that much of the duplicate work would also have been necessary had the counterclaims been filed in April 2005. In addition, the Court agrees with Inc. that because most, if not all, of the produced documents have already been digitized and/or coded, the process of re-reviewing the documents should not be as oppressive as International claims. The Court is also not persuaded that the transactions underlying the proposed counterclaims are so different from the allegations in the second amended complaint that any additional discovery would be substantial. Finally, International's concerns about defending itself in two different forums and litigating counterclaims based on Canadian law in this district are irrelevant to the analysis; those concerns would exist even if Inc. had pleaded the counterclaims in April 2005 and therefore do not support International's claims of undue prejudice.

## C.    **Futility of Amendment**

International argues that Inc.'s proposed amendment should be denied because the counterclaims are futile. A motion to amend the pleadings should not be denied based on futility unless the proposed amendment is "clearly futile," meaning that the amendment could not withstand a motion to dismiss. *Chi. Dist. Council of Carpenters Pen. Fund v. R & R Flooring, Inc.*, No. 98 C 4247, 2000 WL 336515, at *2 (N.D. Ill. Mar. 28, 2000).

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency, not the merits, of the complaint. *Autry v. N.W. Premium Servs., Inc.*, 144 F.3d 1037, 1039 (7th Cir.

1998). When reviewing a motion to dismiss, the Court accepts all well-pleaded facts as true and views any reasonable inferences from them in the light most favorable to the plaintiff. *Albany Bank,* 310 F.3d at 971. Dismissal is proper only when it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). Federal courts require notice, not fact, pleading, in which the complaint must include a "short and plain statement of the claim." *Leatherman v. Tarrant Co. Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168 (1993).

While "the Federal Rules of Civil Procedure do not require a plaintiff 'to set out in detail the facts upon which he bases his claim,' ... he must 'set out sufficient factual matter to outline the elements of his cause of action or claim, proof of which is essential to his recovery." *Menard Inc. v. U.S. Equities Dev., Inc.,* No. 01 C 7142, 2002 WL 31050160, at *1 (N.D. Ill. Sept. 13, 2002) (quoting *Benson v. Cady,* 761 F.2d 335, 338 (7th Cir. 1985)). But "if it is possible to hypothesize a set of facts, consistent with the complaint, that would entitle the plaintiff to relief, dismissal under Rule 12(b)(6) is inappropriate." *Veazey v. Commc'ns & Cable of Chi., Inc.,* 194 F.3d 850, 854 (7th Cir. 1999); *see also Goss Int'l Ams., Inc. v. Graphic Mgmt. Assocs., Inc.,* No. 05 C 5622, 2006 WL 1647517, at *1 (N.D. Ill. June 6, 2006) (citing *Bisciglia v. Kenosha Unified Sch. Dist. No. 1,* 45 F.3d 223, 229-30 (7th Cir. 1995)) ("[W]here it is unclear whether plaintiff could allege sufficient facts, the court should grant leave to amend.").

International contends that Inc.'s counterclaims: (1) are time-barred; (2) are not pleaded with sufficient particularity pursuant to Rule 9(b); and/or (3) fail to state a claim upon which relief may be granted under Rule 12(b)(6). Inc. responds that International

11

ignores the correct standard under the futility analysis by failing to assume the truth of the allegations in the counterclaims. The Court will address each of International's claims of futility in turn.

### 1. **Statute of Limitations**

International states that under Illinois law, the statute of limitations for Inc.'s counterclaims of breach of fiduciary duty, fraud, other torts, and unjust enrichment is five years. As a result, the limitations period for the 1995 and 1997 transactions at issue in the counterclaims expired in 2000 and 2002. International further argues that Inc.'s recitation of facts supporting the tolling doctrines of adverse domination and fraudulent concealment does not salvage the counterclaims, because those doctrines do not apply to Inc.'s allegations.

Inc. responds that its counterclaims include allegations of fraudulent concealment and adverse domination, which are exceptions to the applicable statute of limitations. Inc. points out that International's second amended complaint includes some of the same arguments to avoid the application of the statute of limitations. Furthermore, Inc. argues that the question of whether the exceptions to the statute apply is a factual determination, not appropriate for adjudication on a motion to dismiss.

The Court agrees with Inc. that International's statute of limitations argument relies on facts outside those alleged in the counterclaims. For example, International argues that a certain independent director of Inc. was investigating his concerns about one of the transactions at issue in the counterclaims in 1996 and 1997. International states that this director "clearly had the motivation to sue" and also had knowledge of Inc.'s potential claims in early 1997. (Opp'n to Mot. at 28-29.) Resolving International's

statute of limitations argument would require this Court to consider factual issues outside the counterclaims. Viewing the counterclaims' allegations in the light most favorable to Inc., the Court must conclude that Inc. has sufficiently pleaded possible exceptions to the statute of limitations.

## 2. **Fraud**

International maintains that Inc.'s claims for fraud, conspiracy to commit fraud, and aiding and abetting breach of fiduciary duty are not adequately pleaded pursuant to Rule 9(b). Rule 9(b) provides that: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Rule 9(b) has been described as requiring plaintiffs to allege "the who, what, when, where, and how," of the alleged fraud. *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (internal quotation omitted).

First, International argues that Inc.'s allegations regarding the 1995 *Telegraph* transaction are not sufficient under Rule 9(b). According to International, Inc.'s allegations that International obtained Inc.'s *Telegraph* stock "for well below market value," and at an "unconscionable" and "extraordinarily unfair price" are not backed up with particularized allegations. International relies upon public filings to demonstrate that Inc.'s financial adviser told Inc.'s Board that the consideration Inc. received was fair. International further disagrees with a financial assessment of *Telegraph's* stock referred to in the counterclaims.

International's argument, however, goes to the accuracy of Inc.'s allegations, not to their sufficiency. International also goes to great lengths to explain why Inc.'s allegations related to the share price are implausible or otherwise are not supported by the

record. Again, that does not demonstrate that the allegations are insufficient under the Federal Rules.

"[I]t must be remembered that what Rule 9(b) mandates particularly about are 'the circumstances constituting fraud.'" *United States ex rel. Salmeron v. Enter. Recovery Sys., Inc.*, 464 F. Supp. 2d 766, 768 (N.D. Ill. 2006). Therefore, "a plaintiff is required to provide only a 'general outline' of the alleged scheme sufficient to put defendants on notice about their roles in the fraudulent or false activity." *Id.* (quoting *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992)). International has not disputed that Inc. has alleged the circumstances surrounding its fraud claim. The Court is thus reluctant to dismiss Inc.'s fraud claims based upon Rule 9(b) when International is so obviously able to respond to Inc.'s fraud claims, as demonstrated by its very detailed arguments against those allegations.

International's arguments regarding the 1997 Canadian transaction are similarly unavailing. International again points to certain documents and other evidence in the record indicating that Inc. received a fair price in the Canadian transaction. But the Court's function on a motion for leave to file a counterclaim is not to weigh the allegations and evidence in support of and contradicting the counterclaim. The Court must instead accept all of Inc.'s allegations as true, and further must not reject the counterclaims on the basis of futility unless it is clear that Inc. can prove no set of facts that would support its claims. Under this standard, Inc.'s fraud claims are not clearly futile.

### 3. **Unjust Enrichment**

Under Canadian law, a claim for unjust enrichment is not available where there is a "juristic reason" for the enrichment.[2] *See, e.g., Gladstone v. Canada (Attorney Gen.)*, [2005] 1. S.C.R. 325, at ¶ 16 (Can.). International maintains that its alleged enrichment took place under signed purchase agreements, and a contract is a juristic reason as a matter of law. *See Garland v. Consumers' Gas Co.*, [2004] 1 S.C.R. 629, at ¶ 44 (Can.).

International claims that the purchase agreements bar Inc.'s unjust enrichment claims even though Inc. alleges that those contracts were fraudulently induced. *See Baltman v. Coopers & Lybrand Ltd. (In re Melnitzer)*, [1996] 43 C.B.R.3d 33, at ¶¶ 33, 44 (Gen. Div.). Inc. responds that *Baltman* and the other case cited by International are distinguishable, because the parties in those cases did not seek to rescind the contract at issue, but in this case, Inc. does seek the remedy of rescission.

According to the opinion of International's expert on Canadian law, David Stockwood, Q.C., LSM,[3] a contract provides a juristic reason for enrichment, "even when such contract is induced by fraudulent misrepresentations, unless the contract has been repudiated or rescinded." (*See* Opp'n to Mot. Ex. 1, Stockwood Op. at ¶ 11; *see also* Stockwood Op. at ¶ 18 ("[A] contract induced by fraud is voidable, not void. Unless and until it is repudiated or rescinded, the contract remains in force.").

The Court agrees with Inc. that neither the cases cited by International nor Stockwood's opinion establish that a party cannot pursue a claim for unjust enrichment as long as it is also seeking to rescind a contract. Unfortunately, however, Inc. will not be

---

[2] In its opposition to the motion, International argues that Canadian law applies to the counterclaims, and Inc. does not disagree in its reply brief.

[3] Inc. does not dispute Mr. Stockwood's qualifications or conclusions.

allowed to plead its counterclaims for rescission pursuant to the Canada Business Corporations Act, (see Section C.6, *infra*). Because Inc. is not seeking rescission in any other counterclaim, its motion to add a counterclaim for unjust enrichment must be denied as futile.

### 4. Conversion

International next argues that Inc.'s claims for conversion are futile because International obtained legal title to the assets at issue in the counterclaims. Under Canadian law, a conversion claim "'involves a wrongful interference with the goods of another . . . [that is] inconsistent with the owner's right of possession.'" *373409 Alberta Ltd. (Receiver of) v. Bank of Montreal*, [2002] 4 S.C.R. 312, at ¶ 8 (Can.) (citation omitted). This wrongful interference "'must be wholly without the owner's sanction or assent, either express or implied.'" *Id.*, at ¶ 9 (citation omitted). International argues that a party has no claim for conversion where it contractually agreed to surrender the goods, even if the contract was fraudulently induced. Inc. responds that International has failed to cite any cases supporting its conclusion that contractual consent bars a claim of conversion if the contract was fraudulently induced.

Unlike the unjust enrichment claim, there is no case law directly on point establishing that a conversion claim is barred by a contract, even if that contract was obtained through fraudulent misrepresentation. (*See, e.g.,* Stockwood Op. at ¶ 23.) Although Mr. Stockwood expresses his opinion that such a contract would be a complete defense to a conversion claim, (*see id.*), the lack of relevant case law cautions against finding that the claim is "clearly futile." Accordingly, Inc. will be allowed to plead a counterclaim for conversion.

### 5. Unlawful Interference with Economic Interests

International claims that Inc. did not properly plead its claims for unlawful interference with economic interests. To establish this cause of action, a plaintiff must demonstrate disruption of a business relationship between the plaintiff and a third party. *See, e.g., 671122 Ontario Ltd. v. Sagaz Indus. Can. Inc.*, [1998] 40 O.R.3d 229, at ¶ 56 (Gen. Div.). International argues that Inc. has failed to allege a third-party relationship with which International interfered.

Inc. responds that three elements are necessary to establish a claim of interference with economic interests: (1) intent to injure the plaintiff; (2) interference with the plaintiff's business by illegal or unlawful means; and (3) economic loss suffered by the plaintiff as a result of the interference. *See Reach M.D. Inc. v. Pharm. Mfrs. Ass'n of Can.*, [2003] 65 O.R.(3d) 30, at ¶ 44 (C.A.). Inc. further states that it properly pleaded all three elements in the counterclaim. According to Inc., the six-element test cited by International predates *Reach's* three-element test, which has been cited with approval by several recent cases. *See, e.g., Muhammad v. Mental Health Program Servs. of Metro. Toronto*, 2006 CarswellOnt 5013, at ¶ 42 (S.C.J. Aug. 18, 2006); *Conversions by Vantasy Ltd. v. Gen. Motors of Can. Ltd.*, 2006 CarswellMan 194, at ¶ 30, 2006 MBCA 69 (C.A. June 20, 2006); *King v. Merrill Lynch Can. Inc.*, 2005 CarswellOnt 6765, at ¶ 182 (S.C.J. Nov. 23, 2005).

For purposes of determining whether Inc.'s unlawful interference with economic interests claim is futile, the Court is again mindful that the amendment should be allowed unless Inc. could not prevail under any set of facts. The Court need not determine at this stage whether the three-element or six-element test applies to Inc.'s claim. Whether or

not Inc. has alleged every element of the six-element test, the Court cannot conclude that Inc. would be unable to prove a set of facts that would entitle it to prevail under either formulation of the test. *See Veazey*, 194 F.3d at 854. International has not pointed to any allegation in the counterclaim that would foreclose recovery on the claim. Therefore, Inc.'s claim is not clearly futile, and the amendment will be allowed.

### 6. **Rescission**

International argues that this court does not have jurisdiction to hear Inc.'s claims for rescission pursuant to Sections 241 and 247 of the Canada Business Corporations Act ("CBCA"). According to International, CBCA Part XX allows parties to seek remedies including rescission, but only if the aggrieved party applies for rescission to a "court," which is defined in the CBCA as a specified Canadian court. (Stockwood Op. ¶¶ 37-38); CBCA §§ 2, 241; *see also Taylor v. LSI Logic Corp.*, 715 A.2d 837 (Del. 1998) (holding that Delaware courts do not have jurisdiction to hear cases under Section 241, because the Canadian legislature expressly intended to confine request for relief under this section to the enumerated Canadian courts).

Inc. responds that Canadian law allows a contract induced by fraudulent misrepresentation to be rescinded. *See, e.g., Nesbitt, Thomson & Co. v. Pigott & Pigott Constr. Co.*, [1941] S.C.R. 520 at 530. Inc. further argues that even where the remedy of rescission is unavailable, a party who has been fraudulently induced to enter a contract may instead be awarded money damages under the principles of unjust enrichment. *See, e.g., Dusik v. Newton* [1985] 62 B.C.L.R. 1, 47-48 (C.A.).

This Court does not disagree with Inc.'s general assertion that rescission is a remedy that may be sought in relation to several causes of action. Inc., however, has not

adequately explained why this Court has jurisdiction to hear its rescission claims premised on the CBCA, when the CBCA itself provides that those claims must be heard only in certain enumerated Canadian courts. Therefore, to the extent that Inc.'s motion to amend seeks to add counterclaims seeking rescission pursuant to Sections 241 and/or 247 of the CBCA, the motion is denied as futile.

### 7.  **Recoupment**

Inc. alleges a claim for recoupment against International, seeking to reduce any recovery by International by the amount of damages Inc. alleges it sustained "as a result of International's tortious conduct." (Countercl. at ¶ 143.) International maintains that Inc.'s claim for recoupment is futile because: (1) it does not arise out of any of the transactions on which International has sued Inc.; (2) it seeks affirmative relief from International rather than merely attempting to reduce International's claims against Inc.; and (3) the claim is not supported by any adequately pleaded cause of action.

Inc. responds that the recoupment counterclaim is properly brought as a compulsory counterclaim pursuant to Rule 13(a) because Inc.'s damages arise directly out of the same transactions as did International's claims in the second amended complaint. *See* Fed. R. Civ. P. 13(a) ("A pleading shall state at the counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim . . . .").

"Recoupment is in the nature of a cross-action in which a defendant alleges that it has been injured by a breach by plaintiff of another part of the contract on which the action is founded." *Cox v. Doctor's Assocs., Inc.,* 613 N.E.2d 1306, 1315 (Ill. Ct. App.

1993); *see also Singh v. BP Prods. N. Am., Inc.*, No. 04 C 2088, 2006 WL 273542, at *7 (N.D. Ill. Jan. 31, 2006) ("In Illinois, equitable recoupment is a counterclaim brought to diminish or defeat a party's (generally, plaintiff's) recovery."); *Fed. Sav. & Loan Ins. Corp. v. Burdette*, 696 F. Supp. 1183, 1187 (E.D. Tenn. 1988) (cited in *Resolution Tr. Corp. v. Gallagher*, No. 92 C 1091, 1992 WL 370248, at *9 (N.D. Ill. Dec. 2, 1992)) ("Recoupment claims relate to cross-demands that are inseparably connected with and arising out of the same transaction on which the plaintiff's suit is grounded.").

A counterclaim for recoupment is compulsory under Rule 13(a) "since, by definition, it arises out of the same transaction or occurrence that forms the basis of the opposing party's claim." *Sikora v. AFD Indus., Ind.*, 18 F. Supp. 2d 841, 847 (N.D. Ill. 1998). The question, therefore, is whether Inc. has properly alleged a recoupment claim.

Inc.'s counterclaim for recoupment alleges that damages it suffered as a result of International's tortious conduct arise directly out of the same underlying transactions as those alleged in International's second amended complaint. Specifically, Inc. refers to International's allegations relating to the defendants' scheme to use International "'as a cash cow to be milked of every possible drop of cash, often in a manner evidencing complete disregard for the rights of all shareholders.'" (Countercl. at 33, ¶ 140, quoting Pl.'s 2d Am. Compl. ¶ 13.) The recoupment claim further repeats International's allegations regarding Hollinger's domination by defendants Black and Radler. Inc. alleges that the 1995 and 1997 transactions, which are at issue in Inc.'s counterclaims, made the scheme alleged in International's second amended complaint possible. Finally, Inc. argues that International's claims against defendants Black and Ravelston relating to

their allegedly excessive management fees also arise out of the same scheme as that alleged in Inc.'s counterclaims.

Inc. then applies the "logical relationship" test to analyze whether the counterclaim arises from the "same transaction or occurrence" as the claim alleged in the second amended complaint. *See, e.g., Malinowski v. N.Y. State Dep't of Labor (In re Malinowski)*, 156 F.3d 131, 133 (2d Cir. 1998) ("[A] transaction may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship.") (internal quotation and citation omitted); *Urban v. United States*, 392 F. Supp. 2d 1018, 1023 (N.D. Ill. 2005) (explaining that "the words 'transaction' and 'occurrence' are flexible in meaning and are interpreted liberally in order to carry out the philosophy of Rule 13(a)"). Inc. argues that its counterclaim for recoupment is based upon transactions that were part of the same scheme as that alleged the second amended complaint, even though the transactions themselves were not referred to in the complaint. Inc. therefore considers there to be a logical relationship between International's claims and Inc.'s counterclaim, and concludes that judicial economy is best served by resolving Inc.'s counterclaim as part of this lawsuit.

Even if the Court were to assume that the recoupment counterclaim arises from the same transaction or occurrence as the second amended complaint, Inc.'s analysis faces a far more fundamental obstacle. Inc.'s counterclaim disregards the fact that under Illinois law, claims for recoupment are premised on a correlated contractual breach, not tortious conduct. *See Fed. Sav. & Loan Ins. Corp.*, 696 F. Supp. at 1187 ("Recoupment is a right to claim damages in reduction of a plaintiff's claim for failure by the plaintiff to comply with some cross-obligation or for the violation of some duty imposed by law in

the making and performance of the contract."); *Cox,* 613 N.E.2d at 1316 ("The doctrine of equitable recoupment has been held to apply when a contract, such as a franchise contract, is terminated without just cause for the franchisee has recouped its investment. . . . . "[O]ne significant factor underlying claims for equitable recoupment . . . [is] that termination of the working relationship was *without just cause*") (emphasis in original). Inc. has failed to establish that Illinois law allows a party to claim recoupment in tort, rather than in contract. Therefore, Inc.'s motion for leave to amend must be denied with respect to the recoupment claim.

## CONCLUSION

For the foregoing reasons, defendant Hollinger Inc.'s Motion for Leave to File a Counterclaim [Doc. No. 603] is granted in part and denied in part. The motion is denied to the extent it seeks to add counterclaims seeking: (1) unjust enrichment; (2) rescission based upon Sections 241 and/or 247 of the Canada Business Corporations Act; and/or (3) recoupment. Hollinger Inc. is directed to file counterclaims consistent with this order no later than April 30, 2007.

**SO ORDERED.**

**ENTERED:**

DATE: MAR 2 9 2007

**HON. MARIA VALDEZ**
**United States Magistrate Judge**

22